JACKSON, ex dem. SHIPLEY and others, *vs.* MONCRIEF.

Although there be words of conveyance *in præsenti* in a contract of purchase and sale of lands, still if from the whole instrument it is manifest that *further conveyances* were contemplated by the parties, it will be considered an *agreement to convey,* and not a *conveyance.*

*Notice to quit* to a *vendee* is not necessary, though he enter into possession of the land by the assent of the vendor.

Ejectment may be maintained against a vendee thus entering, who fails to perform his part of the contract under which he enters, on shewing notice from the vendor that the contract is at an end.

THIS was an action of ejectment, tried at the New-York circuit in March, 1829, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The lessors of the plaintiff were the owners of a leasehold estate consisting of six houses and lots in Washington-street in the city of New-York, originally demised by A. L. Stewart, which had come to them by sundry mesne conveyances from the lessees. On 5th March, 1825, an agreement in writing, not under seal, was entered into between W. Shotwell, (agent of the lessors of the plaintiff,) and P. Freeman, commencing thus: "Be it remembered and understood that this fifth day of the third month, March, one thousand eight hundred and twenty-five, William Shotwell, agent for his daughters, hath *agreed to sell and has sold* to Phinehas Freeman, and the said Phinehas Freeman hath *agreed to purchase*

*and has purchased* the lease of six houses in Washington-street," &c. for the sum of $6000, the houses being subject to two mortgages, amounting to $3000, to A. L. Stewart; Freeman agreed to pay the $6000 on or before the 1st May, then next, by giving to Shotwell a good and sufficient warrantee deed of two houses and lots in Morristown, N. J. purchased by him of J. Patten for the value of $2000, free from incumbrance; conveying to him by deed the *estate at Shotwell's landing* on Rahway river, late the property of John Stanbury, containing about 7 acres, &c. for $3000, this property being subject to a mortgage of $2000; and paying $1000 in cash, after deducting therefrom the interest and ground rent due to Stewart, which was to be done (as stated in the agreement) "on or before the first day of May next, *at which time* or before, conveyances are to be made by both parties of the property hereby agreed to be conveyed, free from all incumbrances except such as are above specified." In pursuance of this agreement, Freeman, with the consent of Shotwell, entered into possession of the leasehold property in Washington-street in the spring of 1825, and rented out the same, demising to the defendant in this cause the premises for which this action is brought, and expended in repairs on the property about $1300: on 1st May, 1825, there was due to Stewart for interest and ground rent $1300, and between July, 1825, and February, 1826, Freeman paid on account of ground rent and interest $990; on the 18th June, 1825, he procured a deed of the property at Morristown to be executed to Shotwell in trust for his daughters, and Shotwell entered into possession of the same; he also paid to Shotwell in cash in the year 1825, $287. As to the estate at *Shotwell's landing*, it appeared on the part of the plaintiff that from the 1st May, 1825, Shotwell was constantly applying to Freeman to have the business closed; that on 2d October, 1826, a verbal demand, and on the 6th of the same month a written demand was made of a deed of that property, which demands were not complied with. On the 27th of the same month Freeman applied to Shotwell to grant him a fortnight longer to give a deed of that property, when Shotwell told him the *contract was at an end*, and he would have nothing further to do with it. On 1st January, 1827, the

ground rent on the lots in Washington-street had accumulated to the amount of $1660, and Stewart, the mortgagee and land-lord of those lots, was proceeding to foreclose the mortgage; to prevent which Shotwell was obliged to pay and actually did pay upwards of $1200 previous to 12th April, 1827. On the 16th August, 1827, this suit was commenced. On the part of the defendant it was shewn, that Shotwell leased the estate at Shotwell's landing to a Mr. Stansbury; that in the fall of 1825, Shotwell sent word to Freeman that he did not like to take *his* deed of that property, and wished him to have the property foreclosed under an incumbrance existing upon it; that Freeman accordingly paid $700 to reduce the amount of a mortgage given of that property by the former owner; and that the property was sold under a decree of foreclosure on 11th October, 1825, and bought in by the mortgagee for $2100, who held the same ready to be conveyed to Shotwell when he called for it.

On this state of facts the defendant's counsel insisted that the contract between the parties, together with the possession given under it by Shotwell, amounted to a conveyance in fact of the leasehold estate in Washington-street; but if not, a *notice to quit* ought to have been given before the commencement of the suit. In answer to which it was said, that the legal estate remaining in the lessors, and this being a case of vendor and vendee, the plaintiff was at all events entitled to recover; that notice to quit was not necessary, and particularly so as at most the defendant had shewn only a part performance of the contract, and the lessors had actually put an end to it by express notice to Freeman. The judge charged the jury that the agreement in question was merely a contract to convey, and not a conveyance of the premises; that the legal title remained in the lessors of the plaintiff, and they would have been entitled to recover had they given notice to quit. That the defendant having been put into possession of the premises, was entitled to such notice provided he had performed all the stipulations of the agreement on his part, and that even if he had not performed all the stipulations on his part, if such omission arose from the enlargement of the contract by the plaintiff, or from embarrassments created by him, the defendant was, notwithstanding, entitled to such no-

tice, unless when called on by the plaintiff for performance he had refused so to do after a reasonable time given for that purpose, and what was a reasonable time under the circumstances of the case, was a question of fact for the jury. The jury found for the defendant. A motion was now made for a new trial.

*S. M. Hopkins,* for the plaintiff.

*D. Selden,* for the defendant.

*By the Court,* SAVAGE, Ch. J. In my opinion the contract was an *agreement to convey* only, and not a conveyance. It contains words of present purchase and sale, but those words must be construed in reference to the whole instrument, and by the concluding paragraph it is clear that regular conveyances by both parties were contemplated as the consummation of a contract which, until such conveyances should be executed, was inchoate. The possession was changed, but no title passed out of either the contracting parties. The judge was certainly right, therefore, in deciding that the legal title remained in the lessors.

Notice to quit was not necessary. The defendant was *quasi* tenant at will; but as between vendor and vendee no notice to quit is necessary. This has been several times so decided in this court. The cases are collected and commented on in *Jackson* v. *Miller,* 7 *Cowen,* 751.

The circumstances referred to at the trial, could not, I apprehend, vary the legal rights and duties of the parties; but if they did, I do not perceive any evidence to prove that Shotwell enlarged the time for performance; on the contrary he was constantly urging for performance. A formal demand was made on the 6th October, 1826, and on the 27th of the same month Freeman was unprepared, and wanted longer time, which Shotwell refused. Here was surely time enough. There was a sufficient notice given of the termination of the contract, this suit not being commenced till August, 1827. Freeman was lawfully in possession till October, 1826; but what passed then between him and Shotwell put an end to the contract. The possession under him thereafter ceased

to be lawful. It was not necessary I apprehend, that he should *refuse* to complete the contract; he did in fact *neglect* to do so, which was the same thing to the lessors.

I am of opinion that the plaintiffs should have had a verdict, and of course that a new trial should be granted; costs to abide the event.