WILLIAM A. BROWNING, Appellant, vs. JAMES D. ESTES, Appellee — Appeal from Washington County.

[See same case, 11 Tex. 237.]

A vendor may maintain an action for the recovery of land against his vendee who has entered with the assent of the vendor into possession, but who has made default in the payments stipulated in the contract, and which were conditions precedent to the execution of the conveyance to the vendee. [8 Tex. 96.]

Although the possession of a vendee who enters with the assent of the vendor under a contract be lawful, yet whenever he disaffirms his contract, d'savows the title under which he entered, or refuses payment of the purchase money,

as stipulated, his possession becomes tortious, and he is liable as trespasser, and subject to be ousted at the suit of the vendor. [11 Tex. 597.]

The statute of limitations is available as a defense only when the possession is adverse, and not acquired by the assent of the party against whom it is pleaded. Possession of land taken under an executory contract, for the purchase thereof, is in no sense adverse to the person with whom such contract is made. [21 Tex. 121.]

But where the purchase money has been paid, and the stipulations imposed on the vendee by the contract have been fulfilled, he may hold adversely to the vendor. [5 Tex. 23; 7 Tex. 210; 8 Tex. 42; 14 Tex. 561.]

The fact that the vendee is able to pay any recovery that may be had against him on the not s is immaterial; it rather aggravates the tortious character of his possession.

This action was brought for the recovery of lands. There were two suits between the same parties, each for separate parcels of land; but as they involved precisely the same questions, they were consolidated; and the judgment rendered for the plaintiff in the court below (the appellate here) embraced the lands in dispute in both cases.

The petition alleges title in the plaintiff, and trespass by the defendant.

In the answer, the limitation of five years and of three years is pleaded. And it was further averred that the plaintiff had, in the year 1839, put Nathan P. Browning into possession, and had, in the year 1841, delivered to the said Nathan his bond, a copy of which is annexed, to make title to the said lands; that the said Nathan remained in possession with the assent of the plaintiff, and made improvements thereon for more than five years previous to his decease, in the year 1845. That the said bond has been returned as part of the estate of the said deceased, and that the defendant, as one of his administrators, hath held possession of the said lands.

It was further averred that the plaintiff had sold the land to the said Nathan, now dead, and executed his deed for the same, a copy of which is annexed. The same instrument is referred to in each of the last pleas, and is a penal bond, the important condition of which is, in substance, that the plaintiff would make to the said Nathan a good and sufficient title, in fee simple, to the land, so soon as the said Browning should make payment of two promissory notes, securing the purchase

money; one of which became due on the 25th December, 1840, and the other on the 25th December, 1841.

The facts were found specially by the jury. In them it was stated, in substance, that the plaintiff derived his title from the grantee of the government before the 27th September, 1839; that on that day the plaintiff and N. P. Browning contracted and bargained for the sale of the said land, at which time Browning executed his notes to secure the consideration for the said sales, and, by agreement of the parties, the plaintiff was, at a more convenient time, to execute his bond for title whenever the consideration should be paid; and that in pursuance thereof the said bond was executed. That Browning in his lifetime made various payments, indorsed on said notes, and remained in possession of the lands until his death. That the bond was returned as a part of the estate of the deceased.

That the administrators having refused to allow the balance claimed to be due on the said notes, an action has been brought, and is still pending for its recovery, and a transcript of the record of said suit is made a part of the finding. The estate of Browning is found to be solvent, and able to pay any recovery that may be had upon the said notes. That no other title was ever made to the said Browning, or his administrators, or heirs, since his death. It was admitted that the plaintiff demanded possession of the tracts of land before the commencement of the suit. It appears from the transcript of the suit upon the notes, that the defense set up was the statute of limitations, and that the rate of interest stipulated for in the said notes was usurious.

Upon these facts the jury submitted the law of the case to the court, which the court decided to be in favor of the plaintiff, and gave judgment that he recover the land in controversy. The defendant took an appeal.

WEBB for appellant.

The record shows that the petition in this case was filed on the 22d of October, 1846, and the accompanying transcript,

which is made a part of this case by the special verdict, shows that suit was commenced by Estes against the administrators of Browning, for the recovery of the balance of the money claimed to be due on the notes, on the 7th of October, 1846, and that the last mentioned suit was pending at the time the verdict and judgment were rendered in this case. The transcript of the suit on the notes also shows that Browning had paid in part of the consideration for the purchase of the land to Estes, previous to his death, $2,249.88.

That Estes *sold* the land to Browning in 1839, at which time Browning went into possession under the sale, and retained the possession up to the time of his death in 1845, cannot be controverted. Estes' bond to Browning proves the *sale*. It is true there was no formal deed made to Browning, but a deed would only have been a higher species of evidence of Browning's right; the right *to the land* existed without it. Equity would regard it as *a sale* even without the bond. [2 Story's Eq. p. 98, secs. 790, 791.]

A parol sale of lands in 1839, accompanied by possession, was good; no written title was necessary to secure the rights of the purchaser. [Briscoe vs. Bronaugh, decided at the last term of this court.]

If this had been a suit by Browning's administrator against Estes, to compel him, under his bond, to execute a deed for the land, it is admitted, to entitle him to a decree, he would have had to show a performance of the precedent condition — the payment of the purchase money; but it is not a suit of that character. It is a suit by the vendor against his vendee to recover lands, which his own bond shows he had previously sold, and without alleging any legal or equitable consideration upon which he can base a right to a recovery. [2 Story's Eq. p. 22, sec. 715; Adams on Eject. 247, 285.]

The special verdict shows that the estate of Browning is solvent and amply sufficient to pay any claim which the appellee may have upon it for the purchase money of the land; the non-payment of the purchase money, therefore, is no ground for the rescission of the contract of sale, even had this been an

30

action for that purpose, and in which it was alleged that the purchase money had not been paid. The appellee's remedy obviously was to bring a suit for the purchase money due upon the notes, which he did. He could not at his own mere pleasure rescind the sale and take back the land, and more especially after he had received a large portion of the purchase money, and was then actually prosecuting a suit for the recovery of the residue of it. [3 Ala. R. N. S. 458.]

Had the estate of Browning been insolvent, and unable to pay for the land, possibly a suit in chancery, praying a rescission of the contract upon that ground, might have been maintained. This, however, would have been a doubtful right. The vendor had a lien upon the land for the payment of the notes, and in a proper proceeding he might have enforced that lien. Beyond this he had no claim to the land after the sale to Browning, and after he had put Browning in possession. [2 Story's Eq. pp. 4, 5, 6, 97, sec. 789; Briscoe vs. Bronaugh, and authorities there cited; 3 Ala. R. 305; 1 Ala. R, 273, 622; 4 Ala. N. S. 86.]

If Estes can recover the land in this action, that recovery must decree a rescission of the sale made to Browning, and if the sale be rescinded, what becomes of the money which Browning has paid, and of the notes upon which he is now sued? There is no principle better settled than that even a court of equity will not rescind a contract or sale (not tainted with fraud) unless the parties to it can be restored to their original positions. In this suit it is impossible to restore the parties to their original condition, because the administrator of Browning cannot recover in this action a judgment against Estes for the money already paid, or compel him to restore the notes. [2 Story's Eq. pp. 8, 62, secs. 696, 759; 3 Ala. R. 421.]

Had this been a suit in equity for a rescission of the contract, it is well settled that before the party can claim the benefit of a court of equity, he must himself do equity. Estes, to entitle himself in a court of equity to a rescission of the sale, must not only have alleged that injury would result to him from the inability of Browning's estate to pay for the

land, but he must have offered to return the money already received, and to have given up the notes; neither of which has he done. [1 Fonblanque Eq. 142; 2 Story's Eq. p. 16, sec. 707.]

If it be contended that Estes, *stricti juris*, has a right to recover the land because the legal written title has not been conveyed to Browning, then we say, that if he holds at all, which we do not admit, he holds it in trust for Browning, and may be compelled to convey. A trustee who holds the legal title cannot set up that title against the equitable rights of the *cestui que trust* for the purpose of dispossessing him. If Estes were to recover the possession of the land, it would only be to hold it in trust for Browning, and it would be absurd to say that he can recover from Browning in order that he may hold for Browning. [2 Story's Eq. p. 97, sec. 789.]

But apart from every other consideration, if the plaintiff had a right to bring a suit for the recovery of this land from the defendant, after having sold it to him and placed him in possession, we then say that his right to a recovery is barred by the statutes of limitation. The land was sold to Browning in September, 1839; this suit was not brought until August, 1846. Browning went into possession by the consent of the plaintiff at the time of the sale in 1839, and remained in possession under the sales from that time until November, 1845, when he died, and his administrator went into possession in virtue of his right, and was in possession when the suit was brought in August, 1846.

By the 39th section of the act of December 20, 1836, to organize inferior courts, etc. [1 vol. Laws, p. 156], the peaceable possession of land under color of title for five years gave a valid title against all other persons not within the exceptions of the law; and by the 15th section of the "act of limitations" of February 5, 1841, it is provided that all suits for the recovery of real estate against a person in possession under color of title shall be instituted within three years next after the cause of action accrued, and not afterwards. [1 vol. Laws, p. 156, sec. 39; 5 vol. Laws, p. 167, sec. 15.]

Browning not only was in possession under color of title,

but he was in under an actual and valid title — good against the world — that is, supposing Estes' previous title to have been so, for he was in under all the title that Estes possessed. It would be absurd to say that he was not in under color of title, when Estes declares by his bond that he had *sold* the land to him. If a parol sale, accompanied by possession, conveyed a valid and legal title in 1839, surely that sale is not impaired by the vendor having furnished the vendee with a higher species of evidence to establish the sale, than he would have had if the contract had rested entirely on parol proof. [Briscoe *vs.* Bronaugh.]

"Title," says Blackstone, "is the means whereby the owner of lands has the just possession of his property." [Black. Com. vol. 2, p. 195.]

The "means" alluded to by Blackstone, or "*justa causa*" by Lord Coke [1 Inst. 345], is nothing more than those indicia of ownership which are recognized by the laws of the country as evidence of right. In a country where a parol sale accompanied by possession gives a legal and valid right to the land, the title thus acquired, though more difficult to prove, is just as valid, and carries with it all legal consequences to the same extent that it would do if evidenced by the most formal deed of indenture, in countries in which such modes of conveyance are required. [2 Con. R. 437; 5 Con. R. 684.]

If it be contended that the plaintiff should recover the land back because the statute of limitations may bar a recovery of the balance due on the notes, we reply that he cannot do so in this action, because he has alleged nothing in his petition which shows even an equity. He does not allege that the defendant has not paid for the land, and that he cannot recover the purchase money in his action against him upon the notes; nor does he offer to pay back the money he has already received, and give up the notes. He alleges nothing, except that the bare naked legal title is in him, and this the record shows was not the case, as the title had passed from him by the sale to Browning.

Even had this been a suit in chancery, to compel the de-

fendant to reconvey the land, or pay the residue of the money, it may well be doubted whether such a decree could have been made. The fact that the statute of limitations might prevent a recovery on the notes, would afford no good reason for such a decree, as a party could not come into a court of equity to enforce a right which was strictly legal, merely because he had lost his right to enforce it in an action at law by his own neglect and *laches*. "Where the law has determined a matter with all its circumstances, equity will not interfere, notwithstanding accident or unavoidable necessity." [1 Story's Eq. p. 68, sec. 61.]

But however the law may be in respect to permitting a court of equity to relieve against the statute of limitations, in any case or under any form, where a court of law could not relieve, still the only remedy of the plaintiff was by enforcing his lien upon the land, by having it sold for the payment of his debt; that is, if he could not recover it by other means.

We again repeat, that this is not an action brought by the vendee against the vendor for a specific performance; and whatever might be deemed the equitable rights of the vendor in such a suit, they cannot be made applicable in the present one.

The New York and other cases which assert that where anything is left to be done at a future day, to complete the title, it is only a contract to sell, and not an absolute sale, and the vendor may maintain ejectment at law to recover the possession, at any time before the title is executed, cannot apply to a contract which states expressly that the land *is sold*, and more particularly in a country where a title in writing by deed is not necessary. And even in New York such a contract would be enforced in equity between the parties, and would not be rescinded upon the action of either, unless full justice was done to the other. [9 Cowen, 269.]

An equitable title will prevail against the creditors or purchasers of him who has the mere legal title. [3 Stewart R. 386.]

GILLESPIE and HANCOCK for appellee.

The only claim the defendant could set up to the land in

controversy must arise out of the contract or agreement set out in the plaintiff's bond, executed to Nathan P. Browning in his lifetime, and under whom defendant claims as administrator. The bond is only evidence of what the plaintiff obligated himself to do; and though it be for the conveyance of land, it cannot, of itself, effectuate that object, and transfer to the obligee such a legal estate as would serve him as a defense to an action of ejectment or trespass, to try the title. [Agricul. Bank of Miss. *vs.* Rice *et al.* 4 How. U. S. 225; Wright *vs.* Moore, 21 Wend. 230, and cited cases.] Certain apt and meritorious words must be used by the grantor to convey such an estate. [Id.]

The bond was for the conveyance of a title to the land, upon the consideration money being first paid; until that was done neither the obligee, or any one claiming under him, could demand and force a compliance with the undertaking therein, even in a court of equity. And if the defendant had set up and proved payment of the whole consideration money, it would only have shown in him an equitable interest in the land, and not such an estate as he could plead in defense of the legal title in an action of ejectment. [3 Johns. R. 422, and cases cited; 2 id. 221; 3 Howard U. S. 759; 21 Wend. above cited, 230.]

These authorities show most clearly, both that the only interest a purchaser can take under a bond for title to land is an equitable one, and that such an one is not a bar to this character of action.

The bond limits and defines the rights of the parties to it at the time of its execution, and estops the party claiming under it from setting up any right inconsistent with that he then contracted for. And though he had been in possession of the same land, as found by the jury, some time prior to the execution of the bond, he cannot consistently with that, in the absence of any proof to the contrary, be regarded otherwise than as tenant at will, or at any rate in no higher light, having merely parol permission to occupy the premises. By accepting the bond for a title to the land, to be made to him on the

performance of certain stipulations on his part, he acknowledged himself, at that time, as holding under the obligor, and in legal contemplation as nothing more than his tenant, holding the land in trust for him under whom he held. [Gallaway *vs.* Finley *et al.* 12 Peters, 264; 4 Howard U. S. 295, and cited authorities.]

Judging from the pleas appearing in the record, the only right set up by the defendant below is under the several sections of the act of limitations, to which they obviously refer. And this right, when the acknowledged aim and policy of such laws are inquired into, and the character of claims intended to be protected under their peaceful and quieting mantle, as well as the necessary character of an adverse possession, upon which these statutes can operate, will, it is thought, be found to occupy a narrower foundation than such pretended rights have ordinarily sustained in courts of justice.

The 15th section of the act of 5th February, 1841, page 167 clearly contemplates such titles as are held in a direct line or chain of transfers from the government, and can be traced from the holder by a direct line of regular, unbroken transfers to the original sovereign of the soil. And a color of title, as explained by the legislature using the expression, only differs from the unqualified title in this: that some of the intermediate links of transfer might be irregular, or not be in strict accordance with the rules of conveyancing in every particular, but does not free the claimant to lands from the necessity of having the transfer direct to himself, regular. This is a construction that it seems might have been very well placed upon this section, in the absence of any legislative interpretation of the sense in which these words are used; the next section of the act requires a longer time (five years) claiming under a deed duly registered, etc., but does not impose the necessity on the holder of tracing his title by a regular consecutive chain of transfers, back to the government, but suffers him to hold the absolute fee under a deed to him, without looking back after the title of his grantor.

Now is it not manifest, from the terms used throughout both these sections, that the legislature could not have contemplated

any other than a claim to a complete legal title? and which a holder must set up in his own right, not in subordination to, or privity with, any other, by him recognized, superior title, to entitle him to the benefit of the operation of these statutes? This will hardly be controverted.

Then, returning to the position before assumed, that Browning, by accepting the bond of the plaintiff for a title, acknowledged the supremacy of his right, and if provision had been made therein for his taking immediate possession, he would, in legal contemplation, have been nothing more than the tenant or trustee of the vendor, and equally estopped from disputing the title of his vendor, as such. The relation between them as vendor and vendee is equally fiduciary as that of landlord and tenant. While that confidential relation existed between them, no length of time could be insisted on by the vendee to augment his interest in the estate; before any limitation could run in his favor he must set up an adverse possession in his own right, clearly and expressly disavowing to hold under or in right of his vendor, which disclaimer of the vendee must be brought home to the vendor, and that fact shown, or the original relation will be supposed existing between them. [4 Howard U. S. 295, 296; 5 Cowen, 74, 92, 99, 100, 104, 484; 16 Johns. R. 301; 1 Cowen, 610; 4 Cowen, 401.]

A contract for a deed, though the purchaser enter under it, does not place him in a situation to hold adversely till he perform the condition of the purchase by paying the purchase-money, such possession not being hostile in its inception. [Adams' Eject. 57, note 2, cites Botts *et al. vs.* Shields' Heirs, 3 Litt. 34, and Vorheirs *vs.* White's Heirs, 1 Marshall (Ky.), 27; 3 Peters, 44; 5 Yerger's Tenn. 398.]

When one claims under or through another, there shall be no adverse possession in such a case, sufficient to give a title, e. g., purchaser under his vendee. [Adams' Eject. 50, note 1; 1 Johns. R. 157.] Possession must be adverse to give a title. [Adams' Eject. 50, note 2; 9 Wheaton, 241, 288.]

It seems that these authorities establish beyond question,

1st. That a contractor for the purchase of land, though he enter under the terms of the contract, takes only as tenant of

the vendor, and holds subservient to the title for which he contracts.

2d. Until he has performed all the conditions of the purchase on his part, he is not in a situation to hold the land adverse to the possession of the vendor, without setting up a claim to the absolute fee of the land, and disclaiming to hold under the vendor, and bringing notice of that fact home to him.

3d. Limitation will not run from the time of entry and claim under a superior title, but from the date of the event, by which the possession becomes adverse and independent of that title.

4th. Adverse possession cannot be set up under a claim of any title less than a fee simple, to invoke the aid of the law of limitation, to defeat such higher estate.

5th. If a party claims a higher estate than that he takes an entry, it devolves on him to establish those facts necessary to create such higher estate; for until then he will be presumed to hold consistently with his entry.

In the case of bar, it would be manifestly unjust that the heirs of Browning should be permitted to retain the possession of this land, and not pay what is justly due. "They should either pay up the money or give up the possession." [1 How. U. S. 56; 15 Vesey, 317.]

It is a well settled principle in equity, that although the law would declare void a security taken for money, and bar the right of action, yet the party coming into equity asking anything will be compelled to do equity, by paying what is justly due and legal interest. [16 Vesey, 124; 19 id. 470; 1 Mad. Ch. 305; 10 Peters, 525.]

Chief Justice HEMPHILL, after stating the facts, delivered the opinion of the court.

In the argument of this cause, it was contended that the land had been actually sold to the vendee, and that the agreement for sale was not executory but executed.

We cannot assent to this proposition, nor to the construction by counsel of the terms of the bond for title, nor do we deem this construction sufficiently doubtful to require a critical ex-

amination for the expression of the instrument, especially as the jury has found that the parties contracted and bargained for the sale of the land, and not that the land had been actually sold.

The first point, then, for consideration is, whether a vendor can maintain an action for the recovery of lands against a vendee who has entered, with the assent of the vendor, into possession, but who has made default in the payments stipulated in the contract, and which were conditions precedent to the execution of the conveyance to the vendee.

The affirmative of this proposition seems now to be well settled law, and is sustained so abundantly by the authorities as to be placed beyond question.

It is true that the possession of the vendee, who entered with the assent of the vendor, is lawful, nor can it be disturbed so long as he performs with fidelity the obligations imposed by the stipulations of the contract, and those which flow from the relation subsisting between the vendor and vendee. But the character of this possession is changed and becomes tortious, when the vendee disaffirms the contract, disavows the title under which he has entered, or refuses payment of the purchase money, or such portion as may be due, etc., etc., and he then becomes liable, as a trespasser, to eviction, at the suit of the vendor.

Whether a mere failure to pay, without notice to quit or demand of possession of the premises, will sustain the action, is not well settled, as there is a contrariety of decisions. But this point will not now require examination, as there was in this case not only a failure, but a refusal, to pay or to restore possession of the lands.

In support of the position that the action can be maintained, we will refer to some of the numerous cases in which the point has been adjudicated.

In Marlin *vs.* Willieck *et al.* 7 Serg. & Rawle, 297, it was decided that after articles for the sale of land, on which the vendor received part of the purchase money, and the residue was payable by installments, if the terms of payment had long

expired without payment by the vendee, before or after suit brought, the vendor may recover in ejectment against the vendor.

In Wright *vs.* Moore, 21 Wendell, a purchaser in a contract for the sale of lands was to pay down a portion of the purchase money, enter into immediate possession, and pay the remainder by installments, at deferred periods, and the vendor was to execute a conveyance in two months; it was held that the vendor could maintain ejectment on default of payment of the second installment, though the first was paid, and though he did not, before bringing suit, tender a deed.

It was ruled in the case of Power *vs.* Ingram, 3 Barbour's Sup. C. Rep. 576, that where a person enters into possession of the land of another, with his assent, under a contract to purchase the same, the vendor may maintain ejectment against him after default in either of the payments stipulated in the contract, without the previous service of a notice to quit. [ *Vide* Kenada *vs.* Granger, 3 Barbour, 590; Harle *vs.* McCoy, 7 J. J. Marshall, 318; 7 Blackford, 142; 5 Wendell, 26.]

That the vendor has, on default of vendee, superior right to the premises agreed to be sold, will be clearly perceived by reference to cases which determined, in effect, that where lands were purchased on a credit, and a bond was taken for title when the purchase money should be paid, on failure of the vendee to pay according to the terms stipulated, the vendor might consider the contract at an end, and could lawfully sell to another person. [ *Vide* Holloway *vs.* Moore, 4 Smedes & Marshall; Kinney's Law Compendium, vol. 2, pp. 60, 61.]

In Hatch *vs.* Cobb, 4 J. C. R. 553, it appeared that the vendee had made default in the payments, which by the contract were made a condition precedent to the conveyance. That the vendor had accepted a payment subsequent to the default, and having repeatedly afterwards called for payments, which were not made, he subsequently assigned his interest to a third person, the chancellor held that he was not bound to wait longer, but had a clear right to exact immediate payment,

or else to part with his interest in the land to another, to meet his own convenience or necessities.

The defendant has pleaded the statute of limitations in bar of the action, but this defense is available only where the possession has been adverse, and not when taken by virtue of the assent and permission of the plaintiff. And it is a settled principle of law that a possession of land, taken under an executory contract for the purchase thereof, is in no sense adverse to the person with whom the contract is made. [*Vide* Adams on Ejectment, p. 31; in notes 5 Law, 74; Mass. Rep. 325; 2 Nott & McCord, 417; 5 Littell's Rep. 318; 3 Littell's Rep. 34.]

There are exceptions to the general rule; as, for instance, where the whole of the purchase money has been paid, and the stipulations imposed on the vendee by the contract have been fulfilled, he may hold adversely to the vendor, and other circumstances may be imagined which might impress an adverse character on the possession. But as none of these are in this case, such exceptions need not be further noticed or considered. [*Vide* 16 Peters, 25, 53, 54; Barton *vs.* Morris, 15 Ohio, 408.]

The judgment may operate with some severity upon the appellant, but the pleadings and facts proved do not admit of the award of any other, or of one by which exact justice would be distributed to the parties.

Had the defendant claimed under an absolute conveyance, his refusal to pay after action was barred by limitation on the notes, would, perhaps, have left the vendor without redress. But, entering under an executory contract, such disloyalty to the relation subsisting between him and his vendor could not be permitted to operate to the defeat of the rights of the latter.

His right to the lands could not be successfully contested until the vendee had performed the conditions precedent to the conveyance; and on failure to do so, the principles of morality, as well as the rules of law, require a restoration of the premises to the vendor.

A vendee cannot be permitted to renounce his contract, and yet enjoy the advantages resulting from its complete execution.

In his answer he claims adversely to the vendor, without alleging a compliance with the terms of the contract, or even a willingness to perform its stipulations.

Had he not disclaimed the fiduciary relation subsisting between him and his vendor, and had he paid the whole of the money before or after suit brought, or offered to pay the same into court, I have no doubt that under our blended system of law and equity, the defendant might, by a proper prayer for relief, have been entitled to a decree for a conveyance from the vendor, at the costs and charges of the vendee.

This or some other suitable relief would doubtless have been awarded under the circumstances of this case, in which the vendor had, by receiving payments repeatedly, acquiesced in the previous defaults of the purchaser.

But he has disavowed the contract, and claims in hostility to his vendor, and has left the court no other alternative than to award the lands to him who holds the superior right.

The fact of his ability to pay any recovery that may be had on the notes is altogether immaterial, or rather it aggravates the tortious character of his possession, as it shows clearly that his failure to comply with his obligations does not arise from accident, misfortune or the pressure of sudden poverty, but from a deliberate abandonment of his contract, and a design to be unfaithful to the duties imposed on him by law, the principles of equity, and the force of his own stipulations.

No question is raised by the pleadings as to the plaintiff's right, after the action brought for ejectment, to institute suit for the unpaid residue of the purchase money. What effect in law the existence of one of the suits should have upon the right of recovery in the other, can be determined when the facts are presented in such shape as to require examination and decision.