Burnett *v.* Scribner.

---

BURNETT *vs.* SCRIBNER.

A county judge has no jurisdiction to entertain summary proceedings against a tenant holding over, unless the conventional relation of landlord and tenant exists between the parties; and he is bound to dismiss the proceedings whenever it is established that no such relation exists.

Whenever a tenant is proceeded against, under the statute, on the ground that he holds over without the permission of his landlord, after default in the payment of rent pursuant to the agreement under which the premises are held, it must be made to appear not only that such holding over is without the permission of the landlord, but that the tenant holds the premises under the agreement pursuant to which the rent is claimed to be due, at the time the proceedings are instituted.

If the tenant is then holding under some new agreement with the landlord, he cannot be dispossessed under the statute on the ground that he is in default in the payment of rent under a prior agreement.

By a lease dated June 23, 1846, S. leased certain premises to B. for the term of five years from the 1st of January, 1847, at a rent of $950 for the whole term, $150 of which was payable on the 1st of January, 1848, and the residue in four equal annual payments thereafter. And in case S. should sell the premises before the end of the term B. agreed to quit and surrender possession on the first day of March after such sale. By another instrument executed by the parties on the 28th of June, 1847, S. sold the premises to B. for $4800, to be paid in twelve equal annual payments, and agreed to give him a warranty deed when one half the payments were made, and to take security on the land for the residue of the payments. *Held* that the lease was surrendered by the parties upon the execution of the second instrument, and was of no force or validity thereafter.

*Held also*, that the second instrument was a contract for the sale and purchase of the premises and not a conveyance; that by that contract the former relation of landlord and tenant was entirely changed, and the relation of *vendor and purchaser* was created between the parties; which was in no sense a tenancy, at least within the purview of the statute authorizing summary proceedings against tenants.

THIS was a certiorari to review the decision of the county judge of, Ontario county upon proceedings instituted by Scribner as landlord, against Burnett as tenant, to recover the possession of a farm, under the statute authorizing summary proceedings to recover the possession of land. The proceedings were commenced by the issuing of a summons by the judge on the 18th of October, 1852, returnable on the 23d of the same month, which was personally served. On the hearing before the county judge, Burnett by his affidavit denied that he was the tenant of Scribner, or that he owed him any rent for the premises in question. Scribner's counsel read in evidence a lease of the premises, from Scribner to Burnett, dated June 23, 1846, for the term of five years from the first day of January, 1847, at the rent of $950, payable as follows : $150 on the 1st day of January, 1848, and the residue in four equal annual payments from that date. And it was agreed that in case Scribner should sell the farm before the expiration of the term Burnett should quit and surrender possession on the first day of March following such sale, on Scribner releasing to him the

rent for the year next preceding the said first of March.   Burnett offered in evidence a contract between Scribner and himself, dated June 28, 1847, by which Scribner sold the premises to Burnett for the sum of $4800, payable in twelve equal annual payments of $400 each ; and agreed that when one half the purchase money was paid he would give a warranty deed for the premises, and take security upon the property for the residue ; and he agreed that Burnett should have the privilege of taking the farm at the expiration of the term of five years, or not : if he did not, Scribner agreed to pay back all but $200 that was paid in each year, with interest.   On this contract was indorsed a payment of fifty dollars, on the 28th of June, 1847. The counsel for Scribner admitted the execution of this contract, and the receipt indorsed thereon, but objected to the reading of the same in evidence, on the grounds that a tenant cannot give evidence that he holds by any other right than as tenant ; that by the terms of the contract it gave no right of possession ; that it could only be received to show a rescission of the lease, which it did not show.   The judge overruled the objections and the contract and receipt were read in evidence. The counsel of Scribner offered to prove a demand of the rent claimed to be due.   To this evidence the defendant's counsel objected, on the ground that the same was immaterial, inasmuch as it appeared from the lease itself that the term thereby created had expired, and had expired before the demand of the rent alleged to be due thereon was made.   But the judge decided that Burnett was a tenant from year to year, on the same terms as those mentioned in the original lease ; and that by the holding over after the expiration of the original lease there was a continuance of that lease, and that therefore the original lease could not be said to have expired : and he overruled the objection.   The witness testified that on the 23d of September, 1852, he demanded of Burnett payment of the rent due on the lease. Scribner declined paying any thing upon the lease, but said he was ready to pay on the *contract.*   The counsel for Burnett moved to dismiss the proceedings, for the following reasons :
1. That this was a proceeding to remove a tenant for non-pay-

ment of rent; and the tenant was not shown to be holding over without permission of his landlord. That indeed the fact of his being in possession though the lease had expired, was evidence of permission from the landlord to him, to remain on the premises, and thus a tenancy from year to year, for another year, was created. 2. That the holding over was not a continuance of the old lease but a new leasing, under which the same tenancy as to terms was continued. That the *tenant* therefore held under an agreement implied by law, and not under the written lease, and no rent being due by the terms of the new lease, he was not holding over after default in payment of rent pursuant to the agreement under which the premises are held. 3. That the landlord could not proceed to *dispossess* his tenant for the non-payment of the rent reserved by the written lease, because he was not holding under that lease; and that if the landlord proceeded at all it must be on the ground that the tenant was holding over after the expiration of his term and not for default in payment of rent. The judge denied the motion. The counsel for Burnett then insisted that the only question before the judge was as to the effect of the contract between the parties, dated June 28, 1847, and claimed, 1. That it was a conveyance in fee of the land, or at least a conveyance of the land to Burnett for life. 2. That at at all events it amounted to a contract to sell and convey, and made no reservation of any rights to Scribner, and so cut off or merged the lease. And he urged that in either view Scribner could not maintain these proceedings. The judge decided that Burnett was the tenant of Scribner, from year to year, of the premises, and that he was holding over without the permission of his said landlord, after default in the payment of rent pursuant to the agreement under which he held the premises, and after demand of the rent had been made. But the issuing of a warrant to dispossess Burnett was stayed by the agreement of the parties.

*S. Baldwin,* for the plaintiff in error.

*C. E. Hobby,* for the defendant in error.

Burnett *v.* Scribner.

*By the Court,* JOHNSON, J. Unless the conventional rela-
tion of landlord and tenant existed between the parties at the
commencement of the summary proceedings before the county
judge, he had no jurisdiction to entertain such proceedings, but
was bound to dismiss them whenever it was established that no
such relation was then subsisting. The statute authorizing
summary proceedings against tenants who hold over applies
only where the conventional relation exists, and not where it is
created by operation of law. (*Evertson* v. *Sutton,* 5 *Wend.*
281.) And where the tenant is proceeded against in this man-
ner on the ground that he holds over without the permission of
his landlord, after default in the payment of rent, pursuant to
the agreement under which such premises are held, it must be
made to appear not only that such holding over is without the
permission of the landlord, but that the tenant holds the prem-
ises under the agreement, pursuant to which the rent is claimed
to be due, at the time the proceedings are instituted. (2 *R. S.*
512, § 28, *sub.* 2.) If the tenant is then holding under some
new agreement with the landlord, he cannot be dispossessed
under this statute on the ground that he is in default in the
payment of rent under a prior agreement. This is manifestly
the true meaning and interpretation of the statute.

The county judge decided correctly, I think, that the instru-
ment between the parties dated 28th of June, 1847, was a con-
tract for the sale and purchase of the premises, and not a
conveyance. The plaintiff's counsel contended there, as he has
here, that it was a conveyance, and vested the title in the plain-
tiff. But the instrument expressly provides that the defendant
shall thereafter give a warranty deed for the premises when one
half the stipulated price is paid, and take security upon the
property for the residue. Although there are words of convey-
ance *in presenti* in an instrument, still if it appears from the
whole instrument that a further conveyance was contemplated
by the parties, it will be construed to be an agreement to convey,
and not a conveyance. (*Jackson* v. *Moncrief,* 5 *Wend.* 26.)

By this instrument then the relation of vendor and vendee

was created between the parties, which is in no sense a tenancy, at least within the purview of the statute which authorizes summary proceedings. (*Kenada* v. *Gardner*, 3 *Barb. S. C. Rep.* 589.) But the county judge held that notwithstanding this agreement to sell, the plaintiff was still a tenant holding under the lease of the 3d of June, 1846, and that the contract which gave to the plaintiff an equitable title only, merged in the lease which created in him a legal estate. But this I think is clearly a mistake. The question of merger, in no way that I can perceive, arises in the case. It is a case of surrender instead of merger. The difference between a surrender and a merger is, that the former is the act of the party, and the latter the act of the law. (4 *Kent*, 100.) The surrender may be made expressly, or it may be implied in law. The law implies a surrender when an estate incompatible with the existing estate is accepted, or the lessee takes a new lease for the same land. It is said in *Sheppard's Touchstone*, " and this rule holdeth albeit the second lease be for a less time than the first, as if lessee for life accept a lease for years, or lessee for twenty years accept a lease for two years." (2 *Shep. Touch.* 301. 4 *Kent*, 103. *Livingston* v. *Potts*, 16 *John.* 28.)

The first instrument between the parties is a lease for the term of five years from the 1st of January, 1847, at a rent of $950 for the whole term, $150 of which was payable the 1st of January, 1848, and the residue in four equal annual payments thereafter. This lease contains a provision that in case the defendant should sell the premises before the expiration of the term, the plaintiff should quit and surrender possession of the premises on the 1st day of March after said sale. The parties therefore contemplated a surrender of the estate created by the lease, and stipulated for it in case of a sale. The second instrument, as as we have already seen, is an agreement to sell and convey. By this instrument the defendant sells the premises to the plaintiff for $4800, to be paid in twelve equal annual payments, and agrees to give the latter a warranty deed free from all incumbrance when one half the payments are made, and to take security on the premises for the residue of the pay-

Burnett *v.* Scribner.

ments. It is further stipulated in this instrument that the plaintiff by making the payments, may hold and enjoy, or sell and transfer the premises. It will be seen that by the second instrument not only was a new relation created different in all respects from the former one, but the right of possession and enjoyment was entirely changed. And besides, the event upon which the parties stipulated for a surrender of the lease was brought about by the voluntary act of both when the last agreement was executed, which was before any rent had become due upon the lease. This circumstance of itself, in the absence of any other, would afford a strong ground of presumption that the parties intended to work a surrender of the lease.

It is contended by the defendant's counsel that the provision in the second agreement by which the plaintiff had his election to take the farm or not, at the expiration of the term of five years, is evidence that the parties intended to keep the lease on foot, and not to cancel it. But the privilege of taking or not, provided for in that clause, evidently refers to taking or completing the purchase under that contract; because it is provided in the same connection that in case the plaintiff elects at the expiration of the specified term not to take, the defendant shall pay back to the plaintiff all he has paid over $200 a year, with interest from the time it was paid. This was wholly inconsistent with the lease. It gave to the defendant in case of rescission by the plaintiff, $200 per annum for the use and occupation of the premises, instead of $150 provided for by the lease. On the whole, I think it is clear that the lease was surrendered by the parties upon the execution of the agreement of sale, and was of no force or validity when these proceedings were commenced. The plaintiff was then holding the premises as vendee, under his agreement. His relation to his former landlord was entirely changed by his contract to purchase. He was not holding without the permission of his former landlord, as is proved by the agreement, and there was no rent due by the instrument under which he was occupying. In short he was no tenant, for any of the purposes contemplated by the act under which the proceedings were had, and the county judge

had no jurisdiction to proceed to dispossess him. The moment it was made to appear that the relation between the parties was that of vendor and vendee, the jurisdiction of the judge to proceed further was at an end. He could not continue his jurisdiction or aid it in any degree by deciding that the plaintiff was a tenant, when in law he was not. The law gives the jurisdiction, and upon all questions both of law and fact affecting jurisdiction the officer attempting to exercise decides at his peril, and he is in nowise aided by an erroneous interpretation of the law. The judge could not by his decision make a tenancy of that which the law holds not to be such, and thus make proceedings valid which were otherwise void.

The question whether or not the plaintiff was a tenant was strictly a question of jurisdiction, and upon that question the evidence before the judge, and his decision thereon, are properly embraced in the return, and are open for review. (*The People* v. *Goodwin,* 1 *Selden* 568.) This view of the case renders it unnecessary to discuss the question as to whether the county judge should have dismissed the proceedings on the preliminary affidavit presented by the plaintiff, on his appearance, showing that an action was pending in the supreme court between the same parties, in which the defendant was seeking the same relief.

The determination of the judge that the plaintiff was holding over as a tenant without the permission of his landlord, after default in the payment of rent, pursuant to the agreement under which he held, was clearly erroneous, and must with all the other procedings before him, be reversed and set aside.

[MONROE GENERAL TERM, December 5, 1853.    *Welles, Selden* and *Johnson,* Justices.]