By the Court*—Jones, J.
It will be perceived that one of the findings by the court below is, “ That about 18th September, 1856, plaintiff entered upon the possession of the premises mentioned in the complaint and commenced the erection of a dwelling-house thereon in conformity with said agreement, and continued his work thereon until about the latter part of February, 1857, when he suspended such work and did not resume the sameand another finding is, that plaintiff violated his *65 contract with defendants’ testator by the total suspension of all work, and by the non-completion of said.house, on the first of May, 1857, the day limited by the contract for its completion.
The question then arises, What is the effect of this breach of contract by plaintiff?
At common law (under the cases of Champlin v. Rowley, 18 Wend., 193 ; Harmon v. Bingham, 12 N. Y., 99; Smith v. Brady, 17 N. Y., 173; Tompkins v. Dudley, 25 N. Y, 172; Culter v. Tobias, 26 N. Y, 217), the plaintiff was guilty of a breach of his contract, and having failed to fully perform the condition precedent to his right to receive the deed, by omitting, to erect the building by the day limited, he could neither bring an action for damages based on the defendant’s refusal to deliver the deed, nor an action on a quantum meruit for the wrork actually performed and the materials actually furnished; but on the contrary defendants (under the authority of Jackson v. Moncrief, 5 Wend., 26; Wright v. Moore, 21 Wend., 230), could at law bring an action of ejectment to recover possession of the property. Defendants having peaceably obtained possession, there is no necessity for them to bring the possessory action of ejectment. The remedy of the plaintiff, if he has any, is in equity. (Wright v. Moore, 21 Wend., 230).
The plaintiff has in fact .brought an action in equity to obtain, preserve and protect such rights and interests as he claims to have. .
He claims that in equity there is a principle to the effect that time is not an essential part of a contract; that in this case time would not in equity be regarded as of the essence of the contract, and consequently although he has not performed by the time limited, he is yet entitled to relief in equity.
It is true it is stated in many English and American cases that in a contract for the sale and purchase of land, the time limited for the completion of the sale and purchase is not in general regarded in equity as an essential part of the contract. I do not, however, understand this doctrine to extend so far as to enable a party to obtain relief against non-performance by the day in cases where he shows neither any good reason for such non-performance, nor any peculiar equity.
Chancellor Kent, in Benedict v. Lynch (1 Johns. Ch., 370) cited *66 from pages 375, 376, 379), observes: “It may then be laid down as an acknowledged rule in courts of equity, that where the party who applies for a specific performance, has omitted to execute his' part of the contract by the time appointed, without being able to assign any sufficient justification or excuse for his delay, and when there is nothing in the acts or conduct of the other party that amounts to an acquiescence in that delay, the court will not. compel a specific performance. The notion that a party may be utterly regardless of 'his stipulated payments, and that a court of chancery will almost at any time relieve him from the penalty of Ms gross negligence is very injurious to good morals, to a lively sense of obligation to the sanctity of contracts, and to the character of tMs court. It would be against all my impressions of equity to help those who show no equitable title to relief.”
He then, after remarking that it was formerly supposed that the time fixed on for the completion of the contract was quite immaterial, proceeds to review the cases, and after such review observes: “From-the review which I have taken of the eases, “ the general principle appears to be perfectly established that “ time is a circumstance of decisive importance in these con-- “ tracts, but it may be waived by the conduct of the parties; “ that it is incumbent on the plaintiff calling for a specific per- •“ form anee to shew that he has used due diligence, or if not, •“ that Ms negligence arose Mom some just cause,' qr has been 151 acquiesced in.”
There is no case, not even those where it is insisted that -time is not of the escence ‘of the contract wliich does not require the plaintiff to show at least this much,_ to entitle himself to relief. ' •
In the case at bar the plaintiff does not bring himself within these principles.
The court below has not found as a fact, nor does the testimony satisfactorily show, that there- was any excuse for the delay, nor does there appear to be any specific equity.
It is true the plaintiff swears he was sick from 5th or 6th April till after Hay 1st. This, however, could not excuse the suspension of the work Mom the latter part of February to the .5th of -ipril, a period of six or seven weeks. Non constat, but *67 that if he had prosecuted the work diligently during that period, he would have finished the work before he"'was taken sick. Nor does it appear how sick he was; he may not have been so sick as to'prevent him from finishing the house through the agency of others; he does not swear he was, and he does not testify that his sickness prevented Mm from completing. All tin's is left to be inferred horn the bare fact that he was sick. I think the fact does not justify the inference.
It is also true that the plaintiff testifies that he proceeded as fast as the weather would permit, “and with as many men as could work there to advantage, considering the weather, up to the time he was taken sick. At folio 111, he testifies that he was going on with the work all the time except when the weather prevented, from the 29th of March to April 6.
As I understand this testimony, he says that he went on with the work up to the 29th March, and that it was only from the 29th March to April 6th, that the weather prevented its prosecution.
The court below found that he absolutely ceased work in the latter part of February,- a month prior to March 29th. This finding is in direct conflict with the plaintiff’s testimony at folios 111 and 130.
With the discredit cast by this finding on plaintiff’s testimony on°tMs material point, the court on appeal should attach but slight importance to the evidence of sickness.
The testimony at folio 111, seems to me" to disprove the excuse arising from the weather. .
That testimony shews that the only delay caused by the weather was eight days from March 29 to April 6. Thus there is over a month of total suspension left unaccounted for. This unexcused delay of one month leads to the conclusion that the assigned causes, of weather and sickness, did not prevent the performance, but that some motive, which was not disclosed, led to the non-performance, and that the weather and sickness were first thought of Avhen this action was commenced.
Upon the evidence, if the case were tiled before me, I should feel very unAvilling to find that non-performance by the day Avas prevented either 'by the weather or the sickness, or both *68 combined. Peeling thus, I cannot, on this appeal, find such to be fact for the purpose of sustaining the judgment, below when the judge below has not chosen to base his decision on the assumption of the existence of such fact.
• It is also .true that if plaintiff is not relieved he will suffer a loss of time and materials. That bare fact,- however, constitutes no special equity—it is common to all cases. As the case at present 'Stands, this loss appears to be the result of plaintiff’s own culpable negligence, and he cannot call on equity to relieve him from it. Besides it does not appear that the value of the time and materials is more than sufficient to reimburse defendant for his advances, interest thereon, and interest on the purchase money.
. Pqr these reasons, it would be improper for the comt to compel a sjeecific performance. The same reasons would also debar the plaintiff from recovering damages in a court of equity. If, by reason of his default, the court declines to decree specific performance, it will also deeline to' award damages.
Thus, neither under the principles of the common law, nor those of equity, is the plaintiff, as the case now stands, entitled to any damages, unless the clauses which in the above statement of the case are extracted, haee verba, from the contract, have the effect of depriving defendant of the rights Avhich he would otherwise acquire by reason of non-performance by the day.
I think those clauses have not such an effect. The tenor , of them seem to be to enable-the defendant to -press forward the work in case of delay during the running of the contract; : and also in case of an abandonment or refusal to proceed during • the running of the contract, to provide a means by which de- : fendant instead of waiting for the contract to expire by limitation, may obtain repayment of his advances, with interest, and ......terminate the contract.
These clauses give to defendant rights which he otherwise - would^hot possess.
They were inserted for the benefit and protection of Hogan not , of Chase. They gave Hogan the right, if he saw fit to exercise *69 it, to terminate the contract in a certain maimer prior to its expiration. There is nothing, however, compelling him to exercise - that right. It was entirely optional with him. He might wait until the time limited for performance expired, and then, in case of non-performance, treat the contract as at an end, and resume possession of the property, saying, “ I do not desire to exercise the right given me by the clauses for my benefit and protection.”
- A review of all of the provisions of "the contract shows this to be the proper construction of those clauses. •
Defendant was to sell the land and make advances-; to give a deed on the completion of the house; and to take back a mortgage for the purchase money, the advances and interest thereon; the contract provides that the house should be completed prior to the first of May, and that the deed and mortgage should be delivered on the completion of the house.
It is evident that defendant had a great interest in having the house completed as soon as possible, for it was on the mortgage on that that he relied for his security for the purchase money of the land and for his advances; and also, that he might derive some means whereby he might readily avoid making further advances and recover back those already made in case the house did not progress satisfactorily.
•Under these circumstances defendant may well have said to Chase, “ I wish some provision inserted whereby I may, if you are dilatory, spur you up so as to get the house completed as much before May 1st as possible, and so that if you at any time before May 1st, abandon or refuse to go on with the contract, I may readily get back my advances and get rid of you;” and Chase may well have replied to this, “ Yery well; I see no harm in this; I have contracted to finish the house before the first of May, and expect to do so, therefore, such provisions cannot, as I see, hurt me.” Thereupon these provisions were agreed on and inserted. But to proceed a little further, Chase contracted to finish the building by May 1st. It is fair to presume that he intended and anticipated to be certainly able to comply with the contract. There is nothing in the contract which suggests that Chase had in his mind the possibility of being prevented from complying by any casualty ; therefore, *70 the provisions in question could not have been inserted for hia benefit or protection in this respect. ‘
Again the provisions could not have been inserted with the view of benefitting or protecting plaintiff in event of his nonperformance by the day, either negligently or wilfully. It cannot be conceived that defendant would consent to such a permission or negligence or willfulness; besides, it is contrary to the spirit of the provisions.
Thus the whole context of the contract, as well as the pecu liar wording of the provisions, leads irresistibly to the conclu sion that the sole effect of the clauses is to invest the defend.ant for his sole benefit and protection with certain rights which he might or might not at his option exercise during the running of the contract; that this is their only object, and that it was so'1 understood and intended by both parties when the contract was made. '
It follows as a necessary consequence that these clauses have (if they have not been effectively exercised before the first Hay) no effect whatever on the legal rights and remedies of either party arising from a non-performance by the day.'
The following questions, viz.:
1. Whether a court of equity will require stronger grounds ' to induce its interference to reheve from the consequences of non-performance by the day, in cases where it considers time to be of the essence of the contract than in cases where it considers time not to be of the essence.
2. As to whether in the contract in question, time is of the the essence or not.
3. As to whether a delay of one year in bringing suit 7/ould not be regarded as such an acquiescence, as that the court woidd grant no relief, even in cases where time was not of the essence.
4. As to whether, under a proper construction of all the decisions, time is not always of the essence.
5. As to whether a court of equity can in any cane decree damages except in lieu of a specific performance, which it decrees the plaintiff entitled to, but which cannot be enforced in consequence, of the defendants inability to perform.
6. And as to whether, where the defendant’s inability to per *71 form arises before the commencement, of the action, the court can in any case decree damages in lieu of a specific performance, which it deems the plaintiff would have been entitled to, had it not been for-such inability of defendants—have not been considered or determined.
It is unnecessary to consider the 1st, 2d and 4th queries since the conclusions have been arrived at, that even under the equity principles applicable to contracts where time is not of - the essence, the judgment cannot be sustained on the facts found, nor on those facts with other uncontroverted facts in the case. ‘ . •
It is also unnecessary to determine the 5th and 6th queries, since the case as presented is not one in which damages can be awarded. On a new trial a case may possibly be made which will raise these questions. It will be more proper to determine them then than now.
The third query is more properly a matter of evidence. Answering it in the negative would not entitle the plaintiff to hold his judgment, since it is reversed on considerations entirely disconnected with this one. An affirmative answer, on the other hand, would not only call for a revérsal of this ' judgment, but a rendition of judgment absolutely for defendant.
It is a matter which undoubtedly would have a great bearing on the question whether any relief should be granted. Its force, however, may be strengthened or weakened by other matters; thus if at the time of the suspension of the work the ^ market was such that plaintiff anticipated, a loss on the contract, that would account for the suspension, and if at-the time rof commencing the suit the market had so improved as to render a profit certain to arise. from completion, that would account for the suit. Under these circumstances the year’s delay •would probably be an absolute bar (under the cases of ¡Rogers v. Saunders, 16 Maine, 92, 99, 100 ■ Alley v. Deschamps, 13 Vesey, 228); on the other hand its effect may, by circumstances to be proved, be either greatly weakened or wholly destroyed. I do not, therefore, think it advisable to determine its effect on this appeal.
A few words respecting the decision made by a former general term of this court in this case.
*72 That decision was rendered on an appeal taken from a judgment entered on a decision made upon a former trial. The judge before whom that former trial was had, held, that the parties by the special provisions before alluded to had proscribed the mode in which the plaintiff’s interest was to be foreclosed in case of default, and that .defendant had not properly pursued that mode in' that he had become the purchaser at the sale made under these provisions. He therefore held that such purchase could not be allowed to foreclose the plaintiff from a right to an account, and consequently directed an account. His findings of fact upon'which he rendered this decision were substantially the same as those before us on this appeal.
There does not however appear to have been any evidence tending to show1 any excuse for the non-performance, and there- was a finding that Chase had furnished materials and performed labor to the amount of $5,040 88. These constituted the only differences between the case as then and as now presented to the appellate court.
The appeal taken from the judgment entered upon such former special term decision was heard before two judges only. One of the judges held that as the plaintiff had shown no excuse for the non-performance, he could not recover damages ■at law, nor could he obtain either a specific performance or damage in equity; he also held the special provisions and the acts done thereunder could have no bearing whatever in the determination of the rights of the parties. He also held that while plaintiff was not entitled to recover anything, defendant was entitled to recover damages against plaintiff for non-performance. He also held that if the action could be maintained in any shape the defendant should be allowed in diminution of plaintiff1 s claim for the damage to the building by the weather; he therefore decide that the judgment should be reversed and a new trial had. , \
The other judge, without considering .the case in-the aspect in which his associate had considered it, proceeded to discuss the point whether the defendant could rightfully purchase at the sale made by hinq and then without coming to any conclusion on this point" states that the principle on which the ac *73 count was taken below was erroneous for the reason that no allowance was made for the damages sustained by the building by exposure to the elements intermediate, the time when the plaintiff abandoned the work and the time of the subsequent sale of the premises. He then lays down what he regards as the true principle, and decides (but his opinion furnishes' no clue to the ground on which he bases- the decision) that if, on an account taken on such principle a balance should be in favor of plaintiff, Hogan should pay that balance; but if the balance should be in favor of Hogán, he should have judgment for it.
On the ground, then, that the principle of the account, as taken in the court below, was erroneous, that the plaintiff was entitled to an account to be taken on certain other principles, and that the party in whose favor the balance should be found to be on such new accounting was entitled to judgment against the other; he concurred in reversing the judgment below and granting a new trial.
It is apparent that on that appeal nothing was decided except that assuming this action could be maintained in any shape the defendant should be allowed for the damages to the building by the weather. It may then be regarded as the law of this case that defendant is entitled to such allowance if the plaintiff can maintain this action in any shape. But the decision settles no other point, particularly not the question as to whether - the plaintiff had any right of action either legal or equitable ; as the judges did not agree on this point, one of them holding that plaintiff had no right- of action whatever, and the other holding he had a right of action in equity for an account, and for the payment of the balance found due him on such account.
The result from the above views is, that-the judgment must be reversed, and a new trial ordered, for the reason that plaintiff to entitle himself to any recovery must show at least a sufficient excuse or. reason for his non-performance.
It is not, however, intended to be decided that if he succeeds in shewing a sufficient excuse, he will be entitled to recovery. Whether showing a sufficient excuse will give him a prima facie cause of action or not, and whether if it does, it may not be *74 overcome by other facts and circumstances, are questions which had better be reserved until they come before us in a case the judgment wherein is founded on such excuse, or such other facts and circumstances.
Judgment reversed, and new trial ordered, with costs of appeal to appellant to abide the event.

 Present—Mosell, Garvin and Jones, J.J.