CHENANGO GENERAL TERM, January, 1848.   *Shankland*,
H. *Gray*, *Mason*, and *Morehouse*, Justices.

### POWERS *vs.* INGRAHAM.

Where a person enters into possession of the land of another, with his assent, under a contract to purchase the same, the vendor may maintain ejectment against him, after default in either of the payments stipulated in the contract, without the previous service of a notice to quit.

Where there is no dispute about the facts, the law arising from them is to be declared by the court.

The service of a notice to quit is not in law an admission of a subsisting tenancy; especially where such notice is served at the same time with a declaration and notice in ejectment.

ERROR to the Cortland common pleas.  Ingraham brought an action of ejectment against Powers in the court below, to recover lot No. 47 in the town of Solon.  On the trial it appeared that the plaintiff below was the owner of the premises, and that on the 6th day of April, 1837, he contracted by deed to sell the lot to Powers for $300, payable as follows : $30 on the 20th of March then next, and $50 on the 20th day of March in each of the four succeeding years, and the remainder on the 20th of March, 1843, with annual interest on all the payments.  Powers was to clear the enclosed land within three years, and was to reserve the timber on the west part of the lot except three acres.  The interest on the principal sum was paid from time to time up to January 25, 1841, and on that day $114 was paid towards the principal.  A payment of $3,50 was made August 14, 1841, and $10 August 24th, 1842.  The defendant was in possession of the premises on the 7th of March, 1845, when the suit was commenced, and continued in possession.  It appeared on the part of the defendant that at the same time of serving the declaration the witness served a notice which he received from the plaintiff's attorney, as follows :

" To Mr. Alva Powers of Solon.  Sir, you are hereby required to remove from and quit the premises which you hold of me, situate in said town of Solon in the county of Cortland, and on which you now reside, within one month after service

Powers v. Ingraham.

of this notice. Dated the 28th day of February, 1845. Yours, &c. Nathaniel W. Ingraham, by H. S. Conger, Att'y."

A nonsuit was moved for on four grounds : 1. That the defendant was entitled to notice to quit, under the statute. 2. Because the suit was brought before the expiration of the notice served. 3. That the right of entry did not accrue until after the commencement of the suit. 4. That the service of notice to quit was an admission that a tenancy existed. The court ruled against him on all these grounds. The defendant then showed that in October or November, 1844, the parties met at the office of W. H. Shankland for the purpose of consummating their contract by the defendant's paying the balance due on it, and receiving a deed. An arrangement had before then been made between the defendant and Mr. Shankland, that the latter would loan him the amount necessary for that purpose. The amount due was liquidated and a conveyance prepared, the latter before the parties arrived. The defendant wanted a larger loan, which Mr. Shankland declined ; the parties retired for consultation, and on their return the plaintiff said "he had got over his pinch for money at that time, and had concluded to go without it at that time, and when he should need he would give the defendant notice. The plaintiff said he had concluded to let the contract lie as it was, a while longer. The defendant said he was willing it should remain so if the plaintiff was willing, and that when the plaintiff should want the money he should wish Mr. Shankland to let him have it." The defendant then asked the court to charge that if the jury should find from the evidence that there was a parol agreement or understanding between the plaintiff and defendant, in the fall of 1844, that the defendant might remain in possession of the land until the plaintiff gave him notice to leave, this action would not lie until such notice was given, and that the fact of the existence of such agreement should be submitted to the jury. 2d. That a parol license to occupy for a year would be good without being in writing, or until revoked, and no action of trespass or ejectment would lie in such case till the license was revoked. The court refused so to charge, but charged the

Powers *v.* Ingraham.

jury and gave their opinion that if there was a parol agreement made between the plaintiff and defendant, that the defendant might remain in possession of the premises in question till the plaintiff gave him notice to leave, it would be void in law, and the action of ejectment could be maintained without giving notice to the defendant to leave : that there was no question of fact for the jury to pass upon, and directed them to find for the plaintiff. To which there was an exception. And the jury having found a verdict for the plaintiff, the defendant brought his writ of error.

*R. O. Reynolds,* for the plaintiff in error.

*H. S. Conger,* for the defendant in error.

*By the Court,* Morehouse, J. The principal question in this cause is, whether the defendant was entitled to notice to quit. The doctrine respecting notices to quit is as old as the Year Books, and had its origin in the manifest injustice of turning a tenant out of possession of land after he had sown it, without reasonable notice to quit. Six months or half a year was the time fixed by practice, subject to modifications from the nature of the letting, agreement of the parties, special custom, and the discretion of the court, determined by the circumstances of the case. (7 *T. R.* 81. 1 *Esp. Rep.* 94. *Peake's Rep.* 5. *Rising* v. *Stannard,* 17 *Mass.* 282. *Ellis* v. *Paige,* 1 *Pick.* 43.) The defendant claims that he is a tenant at will, or by sufferance, in a sense entitling him to a notice. Tenant at will is, where lands or tenements are let by one man to another, to have and to hold to him at the will of the lessor, by force of which lease the lessee is in possession. In this case the lessee is called tenant at will, because he hath no sure or certain estate ; for the lessor may put him out at what time it pleaseth him. (*Co. Lit.* 55, *a.*) Such tenant was not entitled to notice to quit, but the law gave him the ripened corn which he had sown, and free entry, egress and regress to cut and carry it away. This tenancy at will was attended with so many inconveniences

that the courts in England early raised an implied contract for a year, and added that the tenant could not be removed at the end of the year without six months' previous notice. (*Doe* v. *Porter*, 3 *T. R.* 13.) Tenancies at will, there are held to be estates from year to year merely for the sake of notice to quit. As to every other purpose they are regarded as mere tenancies at will. (*Phillips* v. *Covert*, 7 *John.* 1.　*Bradley* v. *Covel*, 4 *Cowen*, 349.　*Jackson* v. *Salmon*, 4 *Wend.* 327.) An estate at sufferance is created by the laches of the owner or landlord, and his assent, express or implied, that the tenant might continue in possession, or the acceptance of rent, converts an estate at sufferance into an estate at will or a tenancy from year to year. (*Rowan* v. *Lytle*, 11 *Wend.* 616.) A tenant is defined to be one that holds or possesses lands or tenements by any kind of title, either in fee, for life, for years, or at will, or upon sufferance. The defendant was therefore a tenant at will or upon sufferance; (the latter he could not be if in possession with the assent of the plaintiff;) and he insists that as such he was entitled to notice pursuant to 1 *R. S.* 745, § 7. That section provides, that " whenever there is a tenancy at will or by sufferance, created by the tenant's holding over his term or otherwise, the same may be determined by the landlord's giving one month's notice in writing to the tenant, requiring him to remove therefrom." This is substantially the provision in the act of 1820 ; (*Laws of* 1820, *p.* 177 ;) except that *one month's notice* was substituted for *three months*. In the case of *Phillips* v. *Aldrich*, (13 *John.* 106,) the court recognize the rule that a notice to quit is not necessary when the relation of landlord and tenant does not exist. In view of that intimation the late revisers of our statutes, in order to declare the relation and ascertain the rights of parties situated like the present, reported to the legislature a section as follows. " Persons entering upon land, under a contract for the purchase thereof, with the consent of the vendor, shall, after any default in the payment of any principal sum, or of any instalment stipulated to be paid in such contract, be deemed tenants at will." (2 *R. S.* 598.) It was not enacted ; and when we consider how prominent

Powers *v.* Ingraham.

simplicity and certainty were, among the objects of the legislature in that revision, we cannot but infer that they intended that persons entering under a contract to purchase should not be deemed tenants at will in cases where there was nothing upon which to found the presumption of the relation of landlord and tenant but the fact that the purchaser continued in possession after default in a payment stipulated in the contract. This point, however, is entirely clear by express adjudication. In *Jackson* v. *Miller*, (7 *Cowen*, 747,) the cases on the subject of notices to quit, from 1804 to 1827, are collated and compared by Chief Justice Savage. It would be a work of supererogation to review them. The chief justice concludes by laying down the principle, that a tenancy at will created by an entry under a contract to purchase, is an exception to the general rule, that tenancies at will are to be considered tenancies from year to year merely for the sake of notice to quit; and he affirms, that in all the cases he found in our own books notice has been held to be unnecessary where the tenancy at will was created by an entry under a contract to purchase. In *Jackson* v. *Moncrief*, (5 *Wend.* 26,) the question came before the court entirely unembarrassed. The language of the court is, " Notice to quit was not necessary. The defendant was quasi tenant at will, but as between vendor and vendee, no notice to quit is necessary." This case is recognized in *Wright* v. *Moore*, (21 *Wend.* 230.) That was a case in which the defendant took possession by the terms of the agreement.

It is contended that what passed in Mr. Shankland's office between the parties changed their relation to each other, and that the defendant was thenceforth in possession of the premises under a license given on that occasion. There is nothing in the proof favoring such an assumption. " The plaintiff said he had got over his pinch for money at that time; he had concluded to let the contract lie as it was, a while longer. The defendant said he was willing it should remain so if the plaintiff was willing." The language of the parties precludes indulgence in presumption. It would be not violence merely, but a total perversion of the plainest sense of the most familiar

terms in our language, to interpret that colloquy as a cancellation of the then existing contract, and the institution of a new one. There being no dispute about facts, the law arising from them was properly declared and disposed of by the court. (*Jackson* v. *Betts*, 9 *Cowen*, 208.)

Another point is, that the plaintiff having served a notice to quit, it was in law an admission of a subsisting tenancy. My attention has been called to several cases upon this point. That of *Brown* v. *Storey*, (1 *Man. & Gran.* 117 ; 39 *Eng. Com. Law Rep.* 372,) was this. A., after mortgaging in fee to B., demised to C. and then sold to B. the equity of redemption. B. gave noticeof the mortgage, and required C. to pay to him the rent to accrue and not to A. It was held that the notice was sufficient to establish the affirmative of an issue taken upon the allegation that B. demised to C. for one year from the date of the notice. Tindal, C. J. says in that case that the relation of landlord and tenant cannot be created without the consent of both parties. The mortgagor, after giving the mortgage, created a tenancy. The mortgagee might recover in ejectment without giving notice to quit, or he might adopt the act of the mortgagor in granting the lease. In this case he chose the latter by giving notice, which the tenant did not repudiate but elected to continue, and tendered the rent accruing after the notice. It was held also that it was a question for the jury, if its submission had been asked, to determine whether the tenant assented to the tenancy implied in the notice, and upon the ground that there could be no demise without an assent by both parties. *Scott* v. *Miller*, (2 *Carr & Payne*, 318 ; 12 *Com. Law Rep.* 163,) was a case in which the lessor of the plaintiff gave notice to the defendant requiring her to quit premises which she held *as his tenant from year to year*, a short time before bringing the action. The notice was held equivalent to a receipt for rent, and a waiver therefore of a precedent forfeiture. *Brierly* v. *Palmer*, (16 *East*, 53,) was an ejectment against a lessee of tithes. The original lessee held under an agreement creating a tenancy from year to year. He assigned to the defendant 1st March, 1810, and on the 22d March the

plaintiff gave him notice to quit at the following Old Michael-mas. In March, 1811, he gave the like notice to the defendant, the assignee. There was evidence showing that the defendant was in possession of the tithes to October, 1811, but no proof of such possession after the expiration of the notice to quit. There was no evidence that the defendant had any knowledge of any other notice to quit than the one served on him. There could be no delivery of the subject matter, and it was held that the first notice to quit was waived by the second. In *Newby* v. *Jackson*, (1 *Barn. & Cress.* 448 ; 8 *Com. Law Rep.* 126,) there was an agreement between the parties that the lessor of the plaintiff should sell the premises to the defendant if it should turn out that he had title to them, and it was stipulated that the defendant should have possession from the date of the agree-ment. The court held that that created a tenancy. In all these cases, therefore, there existed a tenancy upon which the decisions as to the necessity or effect of notices was predicated.

The notice in this case was served with the declaration and notice annexed in the ejectment suit, and as an admission or acknowledgment of the party they should be taken together. The defendant could not have understood the plaintiff, as admitting by that notice to quit, that he was not entitled to possession of the premises until the expiration of it, or that he intended to waive his right to proceed instantly to turn him out of possession by ejectment. *Williams* v. *Humphreys*, (2 *East*, 237,) held that a party proceeding by ejectment giving a second notice to quit was not a waiver of the first. It was con-tended in that case that it was a question for the jury whether it was intended as a waiver or not. The court say it was not possible for the defendant to suppose that the plaintiff intended to waive the first notice, when he was proceeding, upon the foundation of it, to turn him out of the farm. An ejectment treats the tenant in possession as a wrongdoer at the time when the action is brought, and when he is lawfully in posseesion it is said to be an answer to the action. There would be great good sense and manifest justice in a rule, in a case like this, where there never was technically a tenancy and yet a lawful

possession derived from the plaintiff, to require some notice or demand of the premises before suit brought. The practice of courts in this state before the last revision of the statutes, was settled, that no notice or demand was necessary ; and the legislature, as we have seen, refused to enact a different rule, leaving a party harshly dealt with to his relief in equity.

Finally, did the court err in its instructions to the jury in a matter within the case, and injurious to the defendant? The propositions upon which the court was asked to charge the jury, I think, were abstract ones. There was no pretence that at any other time or place than Mr. Shankland's office the relation of the parties had been changed, unless by the notice. Upon that I have already remarked. In the absence of all evidence that that contract had been changed or abandoned by either party, it was out of the case to speculate as to what the law was in reference to a supposititious one. This remark applies also to the supposed case of a parol license to occupy at will. A parol agreement might have been made and not in writing which would have been binding upon the parties, and have changed the relation in which they stood as vendor and vendee into that of landlord and tenant. If the court erred in that particular, they were right in holding that there was no question of fact in the case for the jury ; and that error did not affect it and cannot therefore be insisted on even by exception. (*Jackson* v. *Betts*, 9 *Cowen*, 208.  *Clark* v. *Dutcher*, *Id.* 674.  *Hayden* v. *Palmer*, 2 *Hill*, 205.  *Hamilton* v. *Russell*, 1 *Cranch*, 308, 318.  *Cowen & Hill's Notes to Phil. Ev.* 787.)

Judgment affirmed.