## WILLIAMS, STEVENS and WILLIAMS *vs.* THE ESTATE OF JAMES W. CAMERON, a lunatic.

A creditor having a claim against the estate of a lunatic, which is under the care and management of a committee, must apply to the court, by petition, to enforce his claim. He will not be allowed to commence a suit at law against the lunatic, or his estate, without the express direction or sanction of this court.

And even where there appears to be a right of action, yet if no particular advantage will accrue from a suit, the preference will be given to a reference under the control of the court, over an action at law.

Thus where a lunatic purchased property, which he afterwards purposely injured and destroyed, before the same had been paid for, on an application by the vendors, for leave to commence an action against the committee of the lunatic for the damage done by the lunatic, the court denied the application, and referred it to a referee to take proof as to the facts and circumstances, and to report the same to the court, with his opinion thereon.

THIS was an appeal from an order made at a special term, granting to the claimants leave to bring an action against the estate of the lunatic. The facts are stated in the opinion of the court.

Williams *v.* Estate of Cameron.

*A. F. Smith,* for the appellants.

*D. T. Walden,* for the claimants.

*By the Court,* MITCHELL, P. J. Cameron, a short time before he was declared a lunatic, but while he was a lunatic, went to the store of Williams, Stevens & Willims, to purchase an oval mirror. While there he conversed about the pictures there and bought some, for several hundred dollars. They were sent to his house at Staten Island, and he in the course of the same or the next day, washed out the colors and destroyed the gilding of the frame of one of them, by an alkali. He told the agent of W., S. & W. that he did this to discover if he had been imposed upon, and if the paintings were not water colors instead of oil colors. After that, as the committee of the lunatic say, and as the plaintiffs' agent testified before the referee, but which it is argued is clearly a mistake as to time, W., S. & W., through the same agent, sold to him about $3000 worth more of paintings. These were delivered also, and some of them were also injured by Cameron. As the agent left Staten Island, at the time, he inquired as to the state of mind of Cameron, and his principals were satisfied that he was insane, and had the pictures returned to them. Shortly afterwards Cameron was found to be a lunatic, by an inquisition. A referee was authorized to inquire what claims there was against the estate. Williams, Stevens & Williams presented their claim; it was controverted, and the referee found against them, on the ground that they had reason to believe that Cameron was insane when they allowed the pictures to pass into or remain in his hands, and that it was by their own fault that the damage occurred. It was admitted before the referee that Cameron was a lunatic at, and before, the times of the sales. Notwithstanding this report, Williams, Stevens & Williams applied to the special term for leave to commence an action against the committee of the estate, for the

damages done by the lunatic, and it was granted. The committee appealed to the general term.

Assuming that the decision of the referee is not conclusive, as it was not made under an order to which the petitioners were parties, and that it was intended only for the advice of the court and the protection of the committee, the question arises, what case should the petitioner make, to obtain leave to sue, and whether he should be allowed to sue at law, or only to have a reference, so that the whole matter should be kept under the control of this court.

In the *Matter of Heller*, (3 *Paige*, 199, 201,) the chancellor says: "The statute has given to this court exclusive jurisdiction over the estates of idiots and lunatics, and over the estates of habitual drunkards, except in a few cases, when a concurrent jurisdiction is given to the court of common pleas. If any person has a legal or equitable claim against the estate, which is under the care and management of the committee, who refuses to allow the same, he *must apply to the court*, by petition, to enforce his claim. And he will not be permitted to obtain payment by *means of a suit at law*, except when the suit is brought under the express direction or sanction of this court. Although the lunacy of the defendant may not always form a *legal* defense, this court, upon a proper application by the committee, will restrain such a proceeding and *compel the plaintiff to come here for justice.* 1 *Jac. & Walk. Rep.* 636, 643 ; 5 *Mad.* 406 ; 2 *Sch. & Lef.* 229 ; 1 *Hag.* 98.) And even if a party succeeds in an action at law, it will be a contempt of the court for him to interfere with the property which is under its exclusive control. Although he may afterwards come here for the payment of his claim, he must *again establish it in such manner as the court may think proper to prescribe.*"

This clearly shows that the resort to a court of law would never be authorized by the court, unless it found that that course was necessary, and would be conducive to justice. It would not be allowed, when the defense of the committee or

lunatic might be doubtful at law, but would be recognized in equity. It may be true that a lunatic is responsible at law for his torts. His defense that the plaintiff either carelessly or willfully placed the property in danger, might not be so clear at law as it would be on the application to this court for payment out of a fund under its control. All the minute circumstances of the case could fairly be presented here ; a strict legal defense, only, could be presented in the court of law. And when the suit at law was terminated, this court would still allow any inquiry as to circumstances which should reduce, or forbid the payment of, the damages.

There is no advantage, therefore, in allowing an action in this case. Justice will be much better administered by referring the claim to a referee, who shall hear all the circumstances of the case and report them to the court.

If all turned on a question of pure law, or on a few issues of fact, as to which there was contrariety of evidence, and there were no circumstances in the case which might then affect the decision at law, an action might be proper. The same views were expressed by the chancellor again, in the *Matter of Hopper*, (5 *Paige*, 489, 491,) where he says : " The proper course for the party who has a claim against the lunatic, or his estate, is to apply to this court by petition for the payment of the debt, or for leave to bring a suit for the purpose of establishing the claim. And if the chancellor or vice chancellor, by whom the committee was appointed, *is satisfied* the debt is justly due, the committee will be ordered to pay it out of the estate ; or, if the claim is doubtful, the court will either have it settled by a reference to a master, or give the claimant permission to establish his claim by a suit at law, or a bill in equity, as may be proper under the particular circumstances of the case."

Here the fact of injury is not disputed. The defense is peculiarly for this court to consider, in what manner and under what knowledge, from which fraud, negligence or carelessness might be imputed to the plaintiffs or their agent, was

the property delivered to the lunatic, and then what amount of damages (if any) the petitioner would be entitled to under all the circumstances.

In *L'Amoureaux* v. *Crosby,* (2 *Paige,* 428,) the chancellor said, "if the claim is disputed or doubtful, it may be referred to a master to ascertain the facts"—"the *chancellor* will see that the legal and equitable rights of the creditors are protected and enforced. But this must be done according to the usual forms of proceeding in this court, or by suits instituted *under its direction.*"

When there is a right of action, the preference is given to a reference under the entire control of the court, over a suit at law. It is not intended, by any thing that has been said, to intimate that there was or was not any fault on the part of Williams, Stevens & Williams; but that question is fairly presented, and can be most properly disposed of on a reference in this proceeding.

It was urged that the order giving leave to commence the action was not appealable. The act of 1854 (*ch.* 270) has made many prior decisions as to what was appealable to the general term quite inapplicable, although it does not affect the right to bring the same matters before the court of appeals. It allows an appeal to the general term from *any order* made at a special term in any *special proceeding.*

The order should be so modified that the petitioners may bring their claim before a referee to be appointed by the court, and that the committee be allowed to prove any circumstances which would show that the petitioners had no right to damages, or which should reduce the amount, or show that they should not be paid such or so great damages out of a fund under the control of this court.

The referee is to report to the court, with his opinion; and to report the evidence, on the request of either party

[NEW YORK GENERAL TERM, December 17, 1857. *Mitchell, Clerke* and *Peabody,* Justices.]