Pierce *v.* Tuttle.

New trial granted.

[MONROE GENERAL TERM, December 7, 1868. *E. D. Smith, Johnson* and *J. C. Smith,* Justices.]

————————•••◦————————

53b 155
9ap 24
53b 155
17ap256

## PIERCE *vs.* TUTTLE.

To maintain ejectment, the plaintiff must establish that he is the owner of the premises in question, and lawfully entitled to the immediate possession of the same, and that the defendant was, at the time of the commencement of the action, in actual possession of said premises, and unlawfully and wrongfully withholds such possession from the plaintiff. *Per* E. D. SMITH, J.

Ejectment is purely a legal action. It is brought to assert and establish a legal title to land, and the right of possession essential to sustain the action must be such as follows the legal title. *Per* E. D. SMITH, J.

An entry under a contract to purchase, is an entry by leave and a license which, while it remains unrevoked, protects such possession, as against an action of ejectment. A vendor cannot eject his own vendee who has entered by license, or under an express agreement giving him such possession, until such license is rescinded, or such agreement broken on the part of the vendee.

But if the vendee is in default in making any of the payments, or in performing any of the conditions or covenants specified in the contract of sale, ejectment may be brought by the vendor, without any notice to quit, or demand of possession.

If the vendor, on the day appointed, offers to perform on his part, and tenders a deed for that purpose, but the vendee does not pay the purchase money, or offer to do so, but refuses to receive the deed, this puts the latter in

default; and the legal consequence of such default is, that it revokes the vendee's license to occupy the premises, and makes his occupation, thereafter, wrongful. The vendor may thereupon bring ejectment, without giving any notice to quit.

In ejectment by vendor against vendee, the latter can only defend his possession by showing a performance on his part, or that he is not in default.

It is no defense to such an action that there is a mortgage which is a lien upon the premises, beyond the incumbrances specified in the contract and assumed by the vendee, where there is a balance of purchase money still due, over and above the amount of all the incumbrances. If the vendee is not content to take the title of the land, he should specify his objections and give up the possession. Or, if he is unwilling to give up the possession, and proposes, notwithstanding the mortgage, to affirm the contract and insist on its execution, he should at the time a deed is tendered, and the money demanded, tender all the purchase money, except a sum sufficient to discharge the incumbrances, and specify his objections to the deed, if he has any other.

ACTION to recover the possession of real estate. The plaintiff was the owner of a farm in Genoa, Cayuga county. On the 26th of February, 1867, the parties entered into a written agreement under seal, the plaintiff to sell and convey, and the defendant to purchase and pay for the same. The defendant was to pay $5200, and assume two mortgages, one "now in possession of Darius Adams, upon which there is due and payable the sum of thirteen hundred dollars, and interest, (*the interest to the first day of April next, to be paid by said party of the first part.*) Also the payment by said party of the second part, of a mortgage of a part of said premises, made to John Weeks, for securing the payment of the sum of five hundred dollars." The plaintiff was to convey by "a good and sufficient warranty deed for conveying and assuring to him, the said O. H. Tuttle, the premises above described, *free from all incumbrances, except the two mortgages above mentioned.*" The money was to be paid, the conveyance given, and the defendant was to take possession on the first of April, 1867. The defendant took possession the first of April, 1867. But the plaintiff was not then ready to make the deed *free from incumbrance.* The performance was

Pierce *v.* Tuttle.

postponed for a day or two, in order to search the records at Auburn. On the second of April the parties went to the clerk's office, and the records were searched by the defendant, and several uncanceled judgments found, and an unsatisfied mortgage to Joseph Munson for $3000. The parties then agreed to meet on the next Friday, at Northville, where, as the plaintiff testified, he was to bring satisfactions of the judgment. But, as the defendant testified, the plaintiff was also to bring Mr. Munson to take the money on his mortgage. The parties met at Northville on Friday. The plaintiff had satisfactions of the judgment, but Munson did not appear, nor did Pierce have the mortgage; in fact, there was then a suit pending for its foreclosure. The plaintiff then tendered the defendant a deed, and demanded the purchase money. The defendant refused to accept the deed or to pay the purchase.money, unless the Munson mortgage was arranged. He refused the deed because it was not according to the contract. The defendant then tendered to the plaintiff a deed for execution, and tendered the purchase money, upon condition that the plaintiff would execute that deed. The plaintiff refused to execute that deed, because he could not, on account of the Munson mortgage. The defendant offered to take the deed with the Munson mortgage, by deducting the amount of the mortgage from the purchase money. But the plaintiff insisted upon litigating the mortgage on the ground of usury.

Shortly after this interview this action was brought; no demand of possession having been made before the suit was brought.

The defense was that the plaintiff had failed to execute and deliver a good and sufficient deed of the premises, free and clear from all incumbrances, except the two mortgages specified in the agreement.

On the trial at the circuit, the evidence being closed,

the counsel for the defendant moved for a dismissal of the action, on the grounds :

*First.* The parties made a written contract for the sale and purchase of this farm on the 26th day of February, 1867. The defendant at the time knew nothing of this Munson mortgage. In this written agreement it was provided that he (Tuttle) should pay all the money for this farm upon the first day of April, then next, with the exception of what was due upon two certain mortgages specified in the agreement, one for $1300, another for $500. Pierce knew at that time that the Munson mortgage was an incumbrance on the premises, for the mortgage was given by himself, and was for $3000, payable on the first of October, after this agreement was entered into. There is no reason why he should not fulfill his contract, except his making up his mind to litigate this mortgage. The defendant has always been ready to pay the Munson mortgage, (and to fulfill the agreement on his part.)

*Second.* The plaintiff cannot recover the possession of the premises from the defendant without first showing a failure on the part of the defendant to fulfill the contract on his part.

But the court denied the motion, and decided that the plaintiff was entitled to recover, to which refusal and decision the counsel for the defendant excepted. And said court charged and instructed the jury as follows : "By the contract between these parties the plaintiff was to give to the defendant an unincumbered title, and this Munson mortgage was an incumbrance that remained thereon. It was clear enough that the purchaser was not willing to pay his money and leave this incumbrance upon the premises. Then they went to negotiate how they could do. They did not agree upon the terms so as to be satisfied. So the defendant does not pay his money on the first of April, but still holds possession of the land. The plaintiff wants to litigate this mortgage on the ground that it is

Pierce *v*. Tuttle.

usurious. He concludes to litigate it. In the meantime the defendant is in possession of the land. I think this action is properly brought and can be maintained, and I must direct the jury to find a verdict for the plaintiff. They must find what the value on the rents and profits are." To which charge and direction the counsel for the defendant excepted.

.The counsel for the defendant then requested said court to charge the jury as follows :

*First.* That if they find that the defendant was ready and willing on the first day of April, to fulfill the contract on his part to pay the money as provided in and by the contract, then the defendant is entitled to recover. But the court declined and refused so to charge; to which refusal the said counsel for said defendant in due time and form excepted.

The court refused to so charge, because Tuttle testified that Pierce told him that he could not give such a title, and he would not do it.

*Second.* That if the jury find that the defendant Tuttle had been at all times ready and willing to pay the amount required by the contract upon receiving the deed as required by the contract, then the defendant was entitled to the verdict in his favor. The court refused so to charge said jury, and the counsel for the defendant excepted.

*Third.* That if the jury find that Pierce has been unable by reason of the non-payment of the Munson mortgage to fulfill the contract on his part, and the defendant has been ready and willing to receive the deed provided for by the .contract, and has at all times been ready to fulfill on his part, this is not a sufficient reason to justify the plaintiff in his refusal or neglect to fulfill the contract on his part, and the defendant is entitled to a verdict. The court refused to charge as thus requested, and the counsel for the defendant excepted.

*Fourth.* That the defendant was not required in equity to accept·any proposition made by the plaintiff in regard to the payment of the Munson mortgage, which required him to allow the·contract on the part of the plaintiff to remain unexecuted. But the court refused so to charge; and to such charge and refusal the counsel for the defendant excepted.

The court then further charged and instructed said jury· as follows: "If the defendant would not pay his money for the farm with the Munson mortgage on it, then he must give up the farm. He cannot keep the farm without paying for it. *Prima facie*, the plaintiff could not perform his contract, but the defendant could not say that he would keep the money and yet not take such title as the plaintiff could give him, and keep the farm too." And thereupon the said counsel for the defendant excepted to that part of said charge.

Under the said directions, charge and instructions of the court, the jury rendered their verdict as follows: "That the plaintiff is the owner in fee of the premises, and·the whole thereof described in the complaint, and is entitled to the immediate possession of said premises, with $500 for the value of the rents and profits claimed in the complaint."

On motion of the attorney for the defendant, it was ordered that the defendant have sixty days to make and serve a case with exceptions, and that the plaintiff have the same time to serve amendments thereto, and that such case and exceptions be heard in the first instance at the general term, and that all proceedings be stayed in the meantime.

*G. O. Rathbun,* for the plaintiff. I. The denial of a non-suit was right. 1. That the plaintiff was in default was of no consequence, for the defendant was in full possession of the plaintiff's farm. In 20 *N. Y. Rep.* 184, the

court says: "The defendant having taken possession, and kept it up to the time of the trial, cannot insist on the plaintiff's failure to tender an unincumbered title. Such failure is no defense." In 28 *N. Y. Rep.* 347, the court say: "For aught that appears, the defendant knew of the defect of title before he took possession, and if so he waived all claim on that ground, by taking possession. (8 *Paige*, 606. 6 *Cowen*, 445.) If this be law, then of course, the defendant was bound, on the Friday, to take the deed offered, and pay, (especially as he had the legal right to pay this same Munson mortgage out of the purchase money, *Atk. on Title*, 565; *Gilb. Eq.* 6; *Hoff.* 37,) or give up possession. And his declaration was a declaration that he would not take any deed whatever, and being in repudiation of the entire contract, should have been attended by an immediate surrender of possession, because he could not repudiate or rescind in part, and affirm in part. At this instant his possession became wrongful, and no demand was necessary. The defendant's possession was wrongful because the defendant's agreement by parol to pay the Munson mortgage was valid, and the defendant's neglect to stand to it prevents his claiming that the plaintiff was bound to strict performance. (6 *N. Y. Rep.* 207. 7 *Cowen*, 48. 41 *Barb.* 226. 19 *id.* 266. *Atk. on Tit.* 565. *Hoff.* 37. 3 *John.* 531. 14 *Wend.* 219. 1 *Barb.* 338. 1 *Wait*, 1080, 1087.) 2. Now, if such is the law, if it was the legal duty of the defendant, under the facts as they existed at the time of this motion for a nonsuit, to either accept the title offered, and pay, or rescind and quit possession; and because he actually did neither, and thus assumed the status of saying, "I've got your farm and mean to keep it, but I don't mean to pay you any thing for it," of course he put himself utterly in the wrong, and we can eject him as we could any other trespasser; especially as he precluded and waived any demand by us, by

Pierce *v.* Tuttle.

defiantly declaring he would not have the farm any way, and yet persistently keeping it.

II. The denial of the motion to dismiss was right. The statement that the defendant was always ready to pay the Munson mortgage was not accurate, but the reverse. He says that at the hotel on the fourth of April he offered to take the farm with the mortgage on it, if the plaintiff would leave out the $500 mortgage; and yet he was bound to pay that; and besides, on the 11th of April he required a deed (he says himself) according to the contract, that is, clear of the Munson mortgage, That the defendant did not know of the Munson mortgage on the 26th of February, when the contract was made, was of no consequence, so long as it appears from the defendant himself that he knew of it when he took possession. (28 *N. Y. Rep.* 347.) The second ground of the defendant's motion is unsound for reasons stated in our first point.

III. The reasons and principles stated in the first and second points are a full answer to the exceptions subsequntly taken by the defendant to the charge, and refusals to charge.

*D. Wright,* for the defendant. I. The court erred in refusing to dismiss the action. It had been proved that the plaintiff not only had not performed, but that he always refused to perform his contract, He insisted, not only that the defendant should take the deed, subject to the payment of one year's interest more on the mortgage owned by Mr. Adams, than the agreement provided for, and that he should also in the deed agree to pay the plaintiff annual interest upon the $500 mortgage, which was not so provided in the agreement; but he also insisted that the defendant should accept the title subject to the Munson mortgage for $3000. It had also been abundantly proved that the defendant had always been ready, and willing, and able to perform the contract on his part.

Pierce *v.* Tuttle.

II. The court erred in charging the jury that this action was properly brought and could be maintained. And in refusing to charge as requested, to wit: " If they (the jury) find that the defendant was ready and willing, on the first day of April, to fulfil the contract on his part, to pay the money as provided in and by the contract, then the defendant is entitled to recover."

III. The court also erred in charging and directing the jury to find a verdict for the plaintiff, and in refusing to charge, as requested, "That if the jury find that the defendant Tuttle, has been at all times ready and willing to pay the amount required by the contract, upon receiving the deed as required by the contract, then the defendant is entitled to a verdict in his favor."

IV. The court also erred in charging the jury that "if the defendant would not pay his money for the farm, with the Munson mortgage on it, then he must give up the farm." In plain English, unless he would run the risk of paying $3000 more for the farm than the agreement called for, the plaintiff might compel him to rescind the bargain he had made.

V. This is a plain case, at law even. The main facts are really undisputed. The defendant was always ready, willing and able to fulfill his agreement strictly and literally. He had taken possession of the farm in good faith, in part execution of the contract. He went into possession rightfully. The plaintiff at the time he entered into the contract, and thereby agreed to give a title free from the incumbrance of this Munson mortgage, (for the title was to be free from all incumbrances, except the two mortgages specified,) knew that this Munson mortgage was an incumbrance, and that it must be removed before he could convey according to this contract. With this knowledge he deliberately executed this contract. Having thus executed it, he was bound to perform it, no matter how onerous it might prove. If he intended to litigate this

mortgage on the ground of usury, he should have so provided in the agreement. That was a defense which existed when the agreement was made, if ever. If such defense existed, it was then known to the plaintiff, and hence he has not the pretense of newly found matter; in fact, he has not the semblance of any excuse. The defendant was entitled to have the title just as the agreement provided, and was willing to pay all he agreed to give for such a title. The plaintiff refused to give such title, and the defendant refused to accept any other; and because he would not accept such as the plaintiff was willing to give, the court held him to be the wrongdoer. Had the defendant consented to take the title subject to the Munson mortgage, to be litigated by the plaintiff, (for he, the defendant, could not set up the usury;) how long would that litigation have continued? What interest would the plaintiff then have to continue the litigation, and no one else could. Not only this, but the plaintiff also required the defendant to pay one year's interest ($91) more than the contract called for, to Mr. Adams; and also $35 a year interest on the $500 mortgage, which was not on interest at all. The defendant was always ready, willing and able to perform the contract on his part. The plaintiff refused to perform. The deed offered was not in accordance with the contract. Interest on the mortgage held by Mr. Adams was to be paid by the plaintiff to April 1, 1867. By the terms of the deed, as offered, the defendant was to pay the interest from April 1, 1866. By the contract, the defendant was to pay the mortgage to Weeks, for securing the payment of $500. By the deed, as offered, the title was not only subject to the payment of this mortgage, which was not on interest, but the defendant "covenants and agrees to, and with the said party of the first part, to pay him annually the lawful interest on the amount named as being secured by said mortgage last above described, until said mortgage shall become due." That

Pierce v. Tuttle.

mortgage bears date August 1, 1864, payable in seven years and six months, without interest. Hence it will become payable February 1, 1872. The decision of the court practically made a new contract for the parties, and then punished the defendant for not having already performed it.

Chancellor Kent, in his Commentaries, says: "The entire performance is a condition precedent to the payment of the price, and the courts cannot absolve men from their legal engagements, or make contracts for them." (2 *Kent's Com.* 11*th ed.* 682, *marginal paging* 508.) See also the following cases: *Wolfe* v. *Howes*, (20 *N. Y. Rep.* 197.) Sickness and death an excuse in a contract for personal services. (*Harmony* v. *Bingham*, 12 *id.* 100.) Judge Ruggles, at page 115, says: "It is a well settled rule of law, that where a party, by his own contract, absolutely engages to do an act, it is deemed to be his own fault and folly that he did not thereby expressly provide against contingencies, and exempt himself from responsibility in certain events; and in such a case, therefore, that is, in the instance of an absolute and general contract, the performance is not excused by an inevitable accident or other contingency, although not foreseen by or within the control of the party." (*Beebe* v. *Johnson*, 19 *Wend.* 500.) "If a party undertake to do an act, he is bound to perform what he undertook, or pay damages; the difficulty and impossibility of accomplishing the undertaking will not excuse him," &c. (*Id.*) That a notice to quit before action brought, was necessary, see *Jackson* v. *Rowan*, (9 *John.* 330.)

*By the Court,* E. DARWIN SMITH, J. To maintain ejectment, the plaintiff must establish that he is the owner of the premises in question and lawfully entitled to the immediate possession of the same, and that the defendant was in fact, at the time of the commencement of the action, in actual possession of said premises and unlawfully and wrongfully withholds such possession from the plaintiff.

All these facts were clearly proved at the trial, and were undisputed except the last. Ejectment is purely a legal action. It is brought to assert and establish a legal title to land, and the right of possession essential to sustain the action must be such as follows the legal title. The plaintiff in this case having the clear legal title had also the right of possession, although the defendant entered under an executory contract for the purchase by him of the land. Such contract conveyed no title, and conferred no right of possession which could be set up at law against the plaintiff. An entry, however, under such contract, was an entry by leave and a license which, while it remained unrevoked, protected such possession as against an action of ejectment. The plaintiff could not eject his own vendee who had entered by license or under an express agreement giving him such possession, until such license was rescinded or such agreement broken on the part of the defendant. On the 1st of April, 1867, the contract of sale and purchase was to be performed by both parties. The plaintiff was to convey the premises and the defendant to pay the purchase money on that day. Neither party was bound to perform the first act. They were to perform their respective parts simultaneously. Neither party performed or offered to perform on that day, except that the plaintiff let the defendant into possession. But performance was clearly waived on that day, and the time extended till the 4th of April. On that day the plaintiff offerd to perform on his part, and tendered a deed for that purpose, but the defendant did not pay the purchase money or offer to do so, but refused to receive such deed.

At this point of time the plaintiff, by his offer to perform, had and did put the defendant in default. The legal consequence of such default was that it revoked the defendant's license to occupy the premises and made his occupation thereafter wrongful.

Pierce *v.* Tuttle.

The proofs clearly show that the plaintiff, on said 4th day of April, tendered a deed in apparent conformity to the contract, and that the defendant refused to receive the same, without assigning any reason, and did not present any other deed himself or demand any other form of deed; nor did he produce or tender the purchase money, or any part of it, or in any other way offer, then and there, to perform such contract on his part.

Upon these facts the plaintiff, upon the defendant's default acquired, then and there an immediate right of action to recover possession at law, and this right of action was in no way released, divested or discharged before the commencement of this suit. The defendant, thereafter, clearly had no legal defense to the plaintiff's action of ejectment. His license to enter was revoked, and he was not entitled to notice to quit.

It is well settled that ejectment may be brought by a vendor of land against his vendee, in possession under a contract or purchase, and that such vendee is not entitled to notice to quit, or demand of possession, if he is in default in making any of the payments or in performing any of the conditions or covenants specified in the contract of sale. (*Jackson* v. *Moncrief*, 5 *Wend.* 26. *Same* v. *Miller*, 7 *Cowen*, 747. *Wright* v. *Moore*, 21 *Wend.* 230. *Powers* v. *Ingraham*, 3 *Barb.* 576.) It follows, from these views, that the defendant's motion for a nonsuit, at the close of the plaintiff's case, was properly denied. As the case then stood, the plaintiff had clearly shown that the defendant was in default in not performing the contract, and also that he had expressly repudiated the same by declaring at the time of such tender of performance by the plaintiff that "he had made up his mind that he could not have the farm nor any thing to do with it."

The case contains various requests to charge, and exceptions to the refusal of the judge to charge as requested and to the charge as made. These requests and the views

expressed in what purports to be a charge of the circuit judge, indicate the points discussed and considered at the circuit, but otherwise they do not present or raise any question for our decision, for the jury were directed by the judge to render a verdict for the plaintiff, and I should presume did so on the spot and without retiring from the box, or considering the facts of the case upon their own responsibility.

The case states that the counsel of the defendant did in due time and form except to that part of this charge wherein the court charged and directed said jury to find a verdict for the plaintiff. This is a valid exception, and presents the question whether a verdict for the plaintiff was properly directed by the circuit judge upon the case as it stood. Such direction was clearly erroneous if the case should have been given to the jury upon any of the propositions or requests made by the defendant's counsel.

The requests and propositions so submitted all proceed, I think, upon an erroneous assumption in respect to the law of the case, and were all properly denied. The requests ask the judge to charge and instruct the jury that if the defendant, on the first of April and afterwards, was always ready and willing to pay the amount required by the contract, upon receiving the deed as required by the contract, then the defendant was entitled to a verdict. By the terms of the contract the plaintiff was to convey the land subject to the payment of two mortgages, one held by one Adams, on which there was due $1300 and some interest, and one held by John Weeks for $500. The defendant was to assume and pay these mortgages, and also pay to the plaintiff $5200. Subject to these mortgages the plaintiff was to execute and deliver to the defendant a good and sufficient warranty deed for conveying said premises free from all incumbrance. The defendant proved that there was also an incumbrance on said premises of $3000 to one Munson. As this mortgage was a

Pierce *v.* Tuttle.

subsisting incumbrance on the premises when the plaintiff tendered a deed and offered to perform said contract, the defendant's counsel insisted at the trial, and such is the argument here, that the defendant was not bound to re-ceive said deed, and was not in default until the plaintiff paid off said Munson mortgage and tendered him a deed in conformity with the contract, which would give him a clear unincumbered title to the land, subject only to the two mortgages mentioned in the contract. And such undoubtedly would have been the rule if the defendant had not taken possession of the land and this action were upon the contract to enforce it at law as an executory con-tract. In such case a party suing must show a strict per-formance, or a tender of performance on his part.

But this is not an action upon the contract, but ejectment to recover possession of the land, and the defendant can only defend his possession by showing a performance on his part, or that he is not in default.

Both parties are actors, and when the plaintiff tenders a performance under the contract the defendant could not remain merely passive and retain his possession. If he was not content to take the title offered, he should, as Judge Comstock says, in *Viele* v. *The Troy and Boston R. R.*, (20 *N. Y. Rep.* 187,) "have specified his objection and given up the possession of the land." Or, if he did not wish to give up the possession of the land, and not-withstanding the incumbrance of the Munson mortgage proposed to affirm the contract and insist on its execution he should, on the said 4th day of April, when the plain-tiff tendered him a deed and demanded his money, have tendered all the money, except a sum sufficient to dis-charge the said Munson mortgage, and specified his objec-tions to the deed if he had any otherwise.

The purchase money was $5200, and the Munson mort-gage $3000; so the defendant was bound, on the first of April, to pay the plaintiff $2200 over and above this Mun-

son mortgage. And when the plaintiff tendered him a deed on the 4th of April he should have tendered this sum of $2200, and demanded a deed, retaining the $3000 in his hands till the Munson mortgage was discharged. Instead of this he proposed to keep, and did keep, both the money and the land. The mistake in the requests and argument of the defendant's counsel, at the circuit and here, is that the defendant was not bound to act at all, but might remain passive and continue in possession of the land until the plaintiff performed the contract to the letter. The defendant was clearly in default on and after the 4th of April. He did not perform on that day, or offer to perform. Consequently his license to enter into possession under the contract was in effect legally revoked, and he was in possession without right, and the plaintiff was entitled immediately to bring ejectment.

It follows that none of the requests made to the circuit judge presented views of the law of the case which it was his duty to submit to the jury, and that his direction to the jury to find for the plaintiff was entirely correct upon the whole case. It doubtless is true, upon the whole evidence in the case, that neither party fulfilled the contract in such manner and form and time as to entitle him to maintain upon it an action at law. The remedies of both parties were in equity, so far as related to the affirmation and enforcement of the contract, and the party asking equitable relief would be bound to do equity.

The motion for a new trial should therefore be denied.

[MONROE GENERAL TERM, December 7, 1868. *E. Darwin Smith, Johnson* and *J. C. Smith,* Justices.]