## APPROPRIATION OF LAND FOR PLATFORM PURPOSES ABOUT A DEPOT.

Probate Court of Columbiana County.

THE CLEVELAND & PITTSBURG RAILROAD COMPANY v. LOUISA M. DEVINE ET AL.

Decided, September 15, 1913.

*Eminent Domain—Railroad Company May Exercise for Depot Platform When—Probate Court May Determine What Questions on Preliminary Hearing—Executory Agreement of Settlement, How Enforceable.*

1. A railroad company duly incorporated and having complied with the law granting to it power to appropriate, may under favor of Section 8759, General Code, appropriate land for platform purposes about a depot.
2. Upon the preliminary hearing the probate court may determine the following issues: 1, the existence of the corporation; 2, the right to make the appropriation; 3, inability to agree; 4, necessity for the appropriation, and such collateral questions as may be necessary and incident to the determination of the foregoing issues.
3. Unless an executory agreement of settlement between parties to a civil action is reduced to writing and signed by them, or acted upon, or duly entered as a judgment, it is null and void. Accord resting on mutual promises is not good without performance, and the rule is applicable in an appropriation case.
4. The determination of the question of the necessity for the appropriation rests primarily with the corporation and unless there is a clear abuse of its power, the court, upon the preliminary hearing, will not interfere.

*Healea & Kinsey* and *Lodge Riddle,* for plaintiff.
*W. F. Lones,* contra.

FARR, J.

On the 23d day of November, 1912, the plaintiff company filed a petition in this court for the purpose of appropriating a certain tract of land, belonging to defendant, Louisa M. Devine, and adjoining the lands of plaintiff, in the city of East Liverpool, this county, and as in the petition set out and described. On the day originally fixed for hearing the preliminary questions, the parties met with their attorneys and negotiations were opened looking toward a settlement out of court, which the defendant now contends was fully consummated and which plaintiff denies. The cause was, therefore, by agreement of parties recently called for hearing upon the issues involved. Four questions must be determined by the court upon the preliminary hearing.

*First.* The existence of the corporation. That is, before a corporation can exercise the right of eminent domain, it must prove its corporate existence, and that it has complied with the law granting to it power to condemn (*Powers* v. *Railway Co.,* 33 O. S., 429; *Atkinson* v. *M. & C. Ry. Co.,* 15 O. S., 21). In the case at bar it is conceded that both the corporate existence and power to condemn were satisfactorily shown and the finding is therefore in favor of plaintiff.

*Second.* The right to make the appropriation. That is, the corporation must show that power to condemn the property sought to be taken has been conferred upon it by some valid legistive enactment (*Powers* v. *Railway Co.,* 33 O. S., 429; *Harrison* v. *Incorp. Vil. of Sabina,* 1 C. C., 52 (1 C. D., 30); *T. E. St. Ry. Co.* v. *T. C. St. Ry. Co.,* 26 B., 172; *Trumbull* v. *Shilling,* 53 B., 167). Two sections of the General Code of this state relate especially to said second issue, as follows:

"Sec. 8745. Any railroad company may maintain and operate, or construct, maintain and operate a railroad, with a single or double track, with such side-tracks, turnouts, offices, depots, round-houses, machine shops, water tanks, telegraph lines, and other necessary appliances, as it deems necessary, between the points named in its articles of incorporation, commencing at or within, and extending to or into any city, village, or place named as a terminus of its road.

"Sec. 8759. A company or municipal corporation which owns or operates a railroad may enter upon any land for the purpose of examining and surveying its railroad line, and appropriate so much thereof as is deemed necessary for its railroad including necessary side-tracks, depots, work-shops, round-houses, and waterstations, material for construction, except timber, a right of way over adjacent lands sufficient to enable it to construct and repair its road and the right to conduct water by aqueducts and to make proper drains."

It is urged by counsel for defendants that neither of said sections authorize the appropriation of land for platform purposes about a depot although land for a depot may be appropriated under favor of said Section 8759, and that both of said sections must be strictly construed. If such indeed is the proper construction of said sections, then a railroad company, having appropriated land for a depot and desiring later to meet the demands of advancing business and increasing patronage, would be unable to acquire a single foot of additional territory on which to accommodate the public and conserve its own interests. Such statutes must be strictly construed (*Lewis on Em. Dom.*, Sec. 3; *Cen. Un. Tel.* v. *Columbus Grove*, 8 C.C.(N.S.), 81; *Rockel*, Sections 1663, 1666), but fairly as well, and not *so* strictly or technically as to defeat the very object of their creation (*Rockel*, Section 1666; *C. & C.* v. *Bridge Co.*, 63 O. S., 455). If the foregoing construction be correct, then it is only possible for a railroad company to appropriate land upon which to construct the building known as the depot, because if in the first instance land may be appropriated for the building and platform, and which must be conceded, then why not for a platform later? Mere lapse of time does not alter or change the character of the right, nor can it be defeated because the company has once before appropriated. *Trustees* v. *O'Meara*, 2 B., 142.

The rule of construction as laid down in 15 Cyc., 588, harmonizes with the weight of authority in this jurisdiction, and reads as follows: "Whatever is essential and indispensible to the construction, maintainance and running of the road, may be taken." *N. Y., etc., R. Co.* v. *Gunnison*, 1 Hum. (N. Y.), 496; *Summerfield* v. *Chicago*, 197 Ill., 270 (64 N. E. 490).

In accord with the foregoing it was held in *Ohio Southern R. R.* v. *Hinkle,* 1 O. N. P., 63, first syllabus, as follows:

"A railroad corporation, in the proper construction of its road bed, having thrown earth, etc., upon a strip of land adjoining its right of way, may appropriate the land so taken, by condemnation proceedings."

If land may be appropriated on which to deposit waste dirt, is it possible that an appropriation may not be made for platform purposes about a depot if the same be necessary? Scarcely; if such were true, every railroad company in this state would be confronted with the impossible task of operating its lines, without depot platforms. In passing on the above case, *R. R. Co.* v. *Hinkle,* 1 O. N. P., 63, the court observed at page 66 as follows: "But with us the power conferred is to apprropriate so much as may be deemed necessary for its railroad." "For its railroad" does not mean merely the tracks, but involves more, including such incidentals as are fairly and directly necessary in actual operation (*Geisey* v. *R. R. Co.,* 7 O. S., 308, 318; *T. & W. R. Co.* v. *Daniels,* 16 O. S., 390: *Carpenter* v. *Ohio,* 12 O. S., 457). It is urged in argument that the word "depot" as used in said Section 8759, General Code, should be strictly defined as the building only. In practically every instance the platform, from which passengers, mail and express are loaded and unloaded at a depot, is in some manner attached to or connected with the building itself, just as a porch is connected with and practically a part of a dwelling. It is true that depot platforms are sometimes, perhaps in many instances, made of different material than the building proper, but so are porches and the depot platform like the porch is always connected in some manner with the building proper, and may therefore be likewise fairly considered to be a part of it; the two are practically inseparable.

The question is settled however in this jurisdiction, the word "depot" being defined in *Pittsbury, Ft. W. & C. R. R. Co.* v. *Rose,* 24 O. S., 219. Day, J., at page 229 observes as follows:

"Clearly, the words, 'the depot' mean the entire ground used by the company for its business purposes with the public at that station."

It was likewise held in *Galveston, H. & S. Ry. Co.* v. *Thornsberry,* 17 S. W., 521, 523; *United States* v. *Colwell,* 86 U. S. (19 Wall), 264, 268 (22 L. Ed., 114). In view of the foregoing, it must be held that the plaintiff company has the right to appropriate for platform purposes.

*Third.* Inability to agree; that is, that the parties have been unable to agree upon the compensation to be paid for the land sought to be appropriated (Section 11039, General Code). The plaintiff alleges that it is unable to agree with the defendant owner as to the compensation to be paid for said land. To plaintiff's petition, said defendant filed an answer averring that on the — day of ————, 1913, the day originally set for hearing, the parties to this action met and made an agreement of settlement upon the terms and conditions set out in said answer.

This is denied by the plaintiff company. It is conceded that if there was such an agreement, that it was not reduced to writing and signed by the parties, nor was it entered as a judgment on the record of the court. It is contended by counsel for plaintiff, that the probate court being one of special and limited jurisdiction (Const., Article IV, Section 8; *Davis* v. *Davis,* 11 O. S., 386; *Sayler* v. *Simpson,* 45 O. S., 141; *R. R. Co.* v. *O'Harra,* 48 O. S., 343; *Kinsella* v. *DeCamp,* 15 C. C., 494; *In re Application,* 14 N. P., 89), has no authority to determine such a collateral question, as made by the answer, that is to determine whether or not such agreement was made and its effect, but that the court has jurisdiction only to determine the four issues, as provided by law as follows: first, the existence of the corporation; second, the right to make appropriation; third, inability to agree; fourth, necessity for the appropriation. It will be observed that the proposition under discussion relates to the third issue. Mr. Woerner in *Woerner on Admin.,* Section 142, states the rule as follows:

"Unless a warrant for the exercise of jurisdiction in a particular case can be found in the statute, given expressly or by implication, the whole proceeding is void; but where jurisdiction is conferred over any subject-matter, and it becomes necessary in the adjudication thereof to decide collateral matters over which no jurisdiction has been conferred the court must of necessity decide such collateral issues."

Since the promulgation of the above, the tendency has been to construe even more liberally and reasonably and substantially widen the jurisdiction of the probate court to meet the exigencies arising in the administration of the duties of said court. The question is determined however in this jurisdiction in the case of *Railroad Co.* v. *Railroad Co.*, 72 O. S., 385, in which Summers, J., observes as follows:

" * * * There are many reasons why the court, having original jurisdiction of the appropriation, should have and many why it should not be held not to have authority to determine every question that properly may be determined in such a proceeding.

"Independently of the signification of any of the so-called jurisdictional questions it is not apparent that the jurisdiction of the probate court is limited to a determination of these questions.    The fact that the Legislature has seen fit, from considerations of convenience or otherwise, to require the probate judge to determine these questions *in limine* does not necessarily make applicable the maxim *expressio est exclusio alterious.*"

The foregoing unmistakably indicates a tendency to widen the jurisdiction of the probate court and in view of which it must be held that such court has jurisdiction to determine the issue under discussion.    It is further urged, however, that if a contract of settlement had been made, as averred in the answer, and it was not reduced to writing, and signed by the parties, acted upon *by* the parties, or entered as a judgment upon the records of the court, that it is null and void.

The earliest adjudication upon this issue in this state, is that of *Frost* v. *Johnson*, 8 O., 393, the first syllabus of which reads as follows:

"An accord with mutual promises to perform, is not a good defense if there be no performance before action brought.    A part performance is not sufficient to bar the pre-existing demand."

Again it was held in *Dunn* v. *Life Assn.*, 6 Dec. Rep., 879, 881, that:

"Accord resting on mutual promises is not good without performance."

A well considered case to the same effect is that of *Bloomer v. Cist,* 4 N. P., 411-416. The most recent case in this jurisdiction is that of *Newburg Brick & Clay Co.* v. *Chojnicki,* 14 C.C. (N.S.), 599, the first syllabus of which reads as follows:

"It is not error to exclude evidence as to an oral executory agreement of settlement theretofore entered into between the parties." Affirmed without opinion, 83 O. S., 458.

It was likewise so held in case of *Conrad* v. *Bare,* 8 C.C.(N. S.), 118. A judgment has no validity until entered of record (*Wiley* v. *Lewis et al,* 4 N. P., 212). The same rule is laid down in *Freeman on Judgments,* Sections 2, 38; 3 O., 553; *Heirs of Ludlow* v. *Johnson,* 3 O., 577; *Goforth's Lessee* v. *Langworth,* 4 O., 129; *Newcomb* v. *Smith,* 5 O., 447. The reason for the principle enunciated in the above authorities is obvious. If it were otherwise, it would mean the abrogation of the primary and well-established rule, that evidence of a compromise can not be offered upon the trial of a cause (*Turnpike* v. *City of Cincinnati,* 19 C. C., 607; 10 C. D., 288), and litigation would be made to bear many additional burdens of doubt and uncertainty; and the inducement would be offered to still more extravagant plays of the individual imagination, which creates the facts of a case to suit the law. In view of the foregoing it must be held that the averments of the answer do not constitute a defense and the demurrer to the same is sustained. The finding must therefore be that the parties were unable to agree.

*Fourth.* "The necessity for the appropriation." The plaintiff alleges in its petition that it is necessary in order to carry out the objects and purposes of its incorporation to appropriate the tract of land described, as an addition to the yard of its passenger depot, and as a portion of the depot platform and yard facilities, for loading and unloading passengers, express and mail in said city of East Liverpool and that such appropriation will enable it to more fully perform its duties as a common carrier. The evidence discloses that the land sought to be taken, lies a short distance west of plaintiff's passenger depot in said city of East Liverpool, and immediately adjacent plaintiff's land now used for platform purposes in front of and

about its passenger depot. The evidence further discloses that at and about the point where the appropriation is sought to be made, the plaintiff company loads and unloads a large amount of express, baggage and mail daily; that in so doing it is necessary to use trucks to convey the same which must pass and repass said platform. It is further shown that plaintiff's land or platform at this point owing to the proximity of its tracks is too narrow for the use of said trucks when required to pass as above stated and for that reason plaintiff has for some years used for platform purposes the land now sought to be taken, which lies immediately at the rear of defendant's hotel known as the "McKinley" in said city of East Liverpool. The evidence further discloses the amount of land owned by plaintiff company round and about its said depot in said city and the number and length of trains stopping there daily, the approximate average amount of mail, express and baggage loaded and unloaded daily. It is conceded that baggage cars attached to said trains and in which mail, express and baggage is conveyed, usually stand when a train is at said depot, at or near the land sought to be appropriated, and it is not denied that plaintiff's land is too narrow at this point, without shifting its tracks, for the trucks used in hauling said mail, express and baggage to pass and repass. The right to determine the question of necessity for the appropriation rests in the first instance with the corporation and if that right be reasonably exercised, it will not be denied. It was so held in *R. R. Co.* v. *Hinkle*, 1 N. P., 63. The second syllabus reads as follows:

"The power conferred by statute is to appropriate so much as may be deemed necessary for its railroad. The corporation is to determine how much is necessary and unless there is a clear abuse in the attempted exercise of its power the court upon the preliminary hearing will not interfere to determine the matter."

It is likewise held in *R. R. Co.* v. *R. R. Co.*, 72 O. S., 368, first syllabus:

"While a corporation has primary discretion what land is necessary for the purpose for which it is authorized to make

appropriations, the probate judge has, under the jurisdiction vested in him by Section 6420, Revised Statutes, to hear and determine the question of the right of the corporation to make the appropriation, and the necessity for the appropriation, power to prevent abuse in its exercise, and, if upon such hearing he determines that the appropriation by the corporation will be an abuse of its corporate power, or destructive of the public use to which the land is largely devoted, he may dismiss the petition.'' * * *

To the same effect it was held in 9 C.C.(N.S.), 405; 10 N.P. (N.S.), 657; *O'Hare* v. *C., M. & N. R. R. Co.,* 139 Ill., 154; *Teedens et al* v. *Sanitary District,* 149 Ill., 87; *In re St. Paul & N. P. Ry. Co.,* 34 Minn., 227, 230; *Lewis on Eminent Domain,* Section 393; *Lynch* v. *Forbes,* 42 Am. St. Rep., 402, 407. It is urged in argument that the plaintiff company could stop its trains in a different place at said depot and by requiring its passengers to travel through its cars, avoid the use of the land in question. Such requirement by the plaintiff company would scarcely be reasonable or practicable, and would subject passengers to unreasonable delay in alighting from trains, as well as inconvenience in passing from one car to another. To unload and unload through the entrance to one or two passenger coaches, the usual number of passengers traveling into and out of a city like East Liverpool would be tedious and unsatisfactory to passengers and company alike, to say nothing of the inconvenience during periods of congested or heavy traffic.

The fact that plaintiff has used said land for some years, with the knowledge and assent of the owner, and for the very purpose for which it is now seeking to appropriate, points strongly toward the necessity for the appropriation and that such necessity was recognized by the parties hereto. Plaintiff company has duly declared the necessity and it does not appear that there is any abuse of its right. It must therefore be held that it is necessary to appropriate the land in question. An entry may be taken in accordance with the foregoing.